PLANNING AND ZONING COMMISSION OF THE TOWN OF
LEBANON *v.* BRUCE GILBERT
(13320)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued June 2—decision released August 23, 1988

*Mary E. Holzworth,* with whom, on the brief, was *John R. Fitzgerald,* for the appellant-appellee (plaintiff).

*Timothy S. Hollister,* for the appellee-appellant (defendant).

HULL, J. The plaintiff, the planning and zoning commission of the town of Lebanon, appeals from a judg-

ment of the trial court denying the plaintiff a permanent injunction and other relief. We find error.

The underlying facts are not in dispute. The town of Lebanon adopted zoning regulations effective March 1, 1966.[1] The regulations divided the town into six use districts: (1) rural agricultural residence district; (2) lake district; (3) business district; (4) planned business district; (5) light industry district; and (6) planned industrial park district. Section 3.2 of the regulations provided that the boundaries of these districts were "established as shown on the zoning map, Town of Lebanon, Connecticut dated March 1, 1966 and filed in the office of the Town Clerk of Lebanon, Connecticut which map is hereby declared to be part of these regulations." With respect to the uses permitted in lake districts, § 4.3a (1) of the regulations provided that "[o]ne seasonal dwelling or camp on a minimum 6000 square foot lot, may be erected in any lake district as shown on the zoning map, namely: Williams Pond, Brewster Pond Stiles Pond, Big Pond, Savin Lake, Spencer Pond and Amston Lake." Section 4.3a (2) of the regulations permitted a one-family, year-round dwelling in a lake district to be constructed on a lot of at least one acre.[2]

---

[1] The town of Lebanon adopted interim zoning regulations in 1962. The 1966 regulations were adopted as permanent regulations.

[2] In 1966, § 4.3 of the Lebanon zoning regulations provided:

"L-LAKE DISTRICT

"a. Permitted Uses.

"(1) One Seasonal dwelling or camp on a minimum 6,000 sq. ft. lot, may be erected in any Lake District as shown on the Zoning Map, namely: Williams Pond, Brewster Pond, Stiles Pond, Big Pond, Savin Lake, Spencer Pond and Amston Lake.

"(2) One 1-family year-round dwelling on minimum one acre lot.

"(3) Public park, playground, beach, athletic field.

"(4) Accessory buildings and uses.

"b. Special Regulations:

"(1) All structures and uses shall comply with Height, Area and Yard Requirements; Off-Street Parking and Loading Requirements; and the regulations governing Signs.

"(2) All uses not specifically permitted are prohibited."

One other lake, Red Cedar Lake, was not listed in § 4.3a (1), but was shown on the zoning map as a lake district. In 1970, the zoning commission readopted the regulations without making any change to § 4.3a (1). In 1973, the regulations were amended to include Red Cedar Lake among the lakes enumerated in § 4.3a (1).

On October 13, 1967, the defendant purchased a parcel of land on Red Cedar Lake. The lot measured less than one acre.[3] His deed restricted occupancy of any dwelling on the land to summer residency. On March 2, 1970, the defendant applied for a permit to build a seasonal dwelling on his lot. The planning and zoning commission issued him a permit to construct a three and one-half room seasonal building. A certificate of occupancy stating that the house was seasonal and contained three and one-half rooms was issued by the town to the defendant in June, 1970. The house was completed as of October 1, 1971. The defendant had, in fact, constructed an eight room, fully insulated house suitable for year-round occupancy.

During 1970 and 1971, the town's zoning enforcement officer conducted a survey of all the homes in the lake districts to determine which properties were restricted to seasonal use. A letter and certificate of occupancy designating the defendant's house as seasonal were mailed to his home in Hartford in October, 1971.

From September, 1971, to May, 1972, during the time the defendant was separated from his wife, he

---

The minimum lot size for a seasonal dwelling has since been increased to 12,000 square feet, and the minimum lot size for a one-family year-round dwelling has been increased to two acres.

Occupancy of a seasonal dwelling was permitted from June 1 to November 1, and restricted to a total of thirty days from November 1 to June 1.

[3] The defendant's lot is approximately 14,700 square feet. One acre measures 43,560 square feet.

lived in his house at Red Cedar Lake on a full-time basis. Following his reconciliation with his wife through 1978, the defendant continued to use his property every weekend, Christmas vacation, New Year's, school holiday and summer vacation from school, occupying the premises in excess of thirty days during the off season.[4]

Beginning in December, 1975, the town building official conducted annual on-site inspections of lake properties to ascertain whether they were being occupied on a year-round basis. The building official noticed that the defendant was living in his house during the winter months of 1978. Earlier that year, the defendant had unsuccessfully sought a variance from the zoning regulations to allow year-round occupancy of the dwelling. In 1979, 1980, 1982, 1983 and 1984, the plaintiff issued cease and desist orders directing the defendant to discontinue year-round occupancy of his house on Red Cedar Lake. The defendant did not comply with the cease and desist orders. In 1978, the defendant added a porch to his home and, without obtaining a building permit, constructed an addition to the building. In 1979 or 1980, he built a garage on the property without having obtained a building permit.

The plaintiff brought this action for an injunction and other relief pursuant to General Statutes § 8-12.[5] The

---

[4] See footnote 2, supra.

[5] "[General Statutes] Sec. 8-12. PROCEDURE WHEN REGULATIONS ARE VIOLATED. If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Such regulations shall be enforced by the officer or official board or authority designated therein, who shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order in writ-

case was referred to an attorney state trial referee for trial of all but one issue. It was reserved to the court to decide the map incorporation issue, that is, to determine whether Red Cedar Lake, by virtue of its depiction as a lake district on the zoning map, although not listed in the zoning regulation, was subject to the

ing the remedying of any condition found to exist therein or thereon in violation of any provision of the regulations made under authority of the provisions of this chapter or, when the violation involves grading of land or the removal of earth, to issue, in writing, a cease and desist order to be effective immediately. The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists, or the lessee or tenant of an entire building or entire premises where such violation has been committed or exists, or the owner, agent, lessee or tenant of any part of the building or premises in which such violation has been committed or exists, or the agent, architect, builder, contractor or any other person who commits, takes part or assists in any such violation or who maintains any building or premises in which any such violation exists, shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues or both; and the superior court shall have jurisdiction of all such offenses, subject to appeal as in other cases. Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within ten days after such service, or having been served with a cease and desist order with respect to a violation involving grading of land or removal of earth, fails to comply with such order immediately, or continues to violate any provision of the regulations made under authority of the provisions of this chapter specified in such order shall be subject to a civil penalty of five hundred dollars, payable to the treasurer of the municipality. In any criminal prosecution under this section, the defendant may plead in abatement that such criminal prosecution is based on a zoning ordinance or regulation which is the subject of a civil action wherein one of the issues is the interpretation of such ordinance or regulations, and that the issues in the civil action are such that the prosecution would fail if the civil action results in an interpretation different from that claimed by the state in the criminal prosecution. If the court renders judgment for such municipality and finds that the violation was wilful, the court shall allow such municipality its costs, together with reasonable attorney's fees to be taxed by the court. The court before which such prosecution is pending may order such prosecution abated if it finds that the allegations of the plea are true."

restrictions imposed by § 4.3a. The referee recommended that the relief sought by the plaintiff be denied and that judgment be rendered for the defendant. The trial court, *Schimelman, J.,* resolved the reserved issue in the defendant's favor and the trial court, *Hendel, J.,* rendered judgment in accordance with the report and recommendations of the referee. The plaintiff appealed and the defendant cross appealed to the Appellate Court. Pursuant to Practice Book § 4023, we transferred the case to this court.

The plaintiff claims error in the following conclusions reached below: (1) that Red Cedar Lake has not been zoned as a lake district since March 1, 1966; (2) that the 1973 zoning amendment including Red Cedar Lake in the enumeration of lakes in § 4.3a (1) was not adequately noticed and thus fatally defective and void; (3) that the alleged notice defect in the enactment of the 1973 zoning amendment was not cured by No. 75-16, § 20, of the Special Acts of 1975; and (4) that the defendant's year-round occupancy is not in violation of the Lebanon zoning regulations. On cross appeal, the defendant claims: (1) that our review of the plaintiff's claims with respect to the referee's report is limited to a determination of whether the referee's conclusions of fact were supported by the subordinate facts found; (2) that the trial court, *Hendel, J.,* erred in considering and acting on the plaintiff's allegedly untimely filed objections to the referee's report; and (3) that both the trial court and the referee erred in concluding that zoning regulations adopted in 1980 subjected the defendant property to lake district zoning. We find error in the trial court's resolution of the map incorporation issue and hold that the 1966 zoning regulations subjected the defendant's property to lake district zoning. Accordingly, we need not reach the issues raised by the plaintiff pertaining to the validity of the

1973 amendment to the regulations and the curative effect of No. 75-16, § 20, of the Special Acts of 1975. Further, we need not consider the issues advanced on the defendant's cross appeal.[6]

The text of § 4.3a (1) confronts us with an ambiguity as to the regulation's scope. It allows for the construction of a seasonal dwelling in *any* lake district shown on the zoning map, but names only seven of the eight lake districts shown on the map.

The plaintiff contends that the zoning regulations, by specifically incorporating the zoning map, which depicts Red Cedar Lake as a lake district, legally designated Red Cedar Lake as a lake district and thus subjected it to the regulations. The plaintiff posits that Red Cedar Lake's omission from the text of the regulation was merely an oversight. Alternatively, the plaintiff argues that, even if the regulation is construed to exclude Red Cedar Lake from the seasonal dwelling requirements, the defendant's property is limited to the other permitted uses articulated by § 4.3a. Consequently, the plaintiff argues, the defendant is in violation of the regulations because his year-round dwelling was constructed on a lot of less than one acre.

---

[6] At trial, the defendant asserted a special defense of estoppel against the town, claiming that, in 1968, he was led by a now deceased building official and zoning enforcement officer to believe that he was permitted to build a year-round house on his property. The referee found that the defendant failed to prove this claim. The defendant also argued that since other property owners at Red Cedar Lake, who were allegedly situated similarly to him, had been granted certificates of zoning compliance, enforcement of the regulations against him was arbitrary. The referee concluded that the town was not estopped from enforcing the zoning regulations against the defendant, and the defendant did not object to this conclusion. In his brief to this court and at oral argument, the defendant adverted to this issue of allegedly inconsistent zoning enforcement at Red Cedar Lake. He conceded, however, that he was not pursuing any claim of estoppel. Accordingly, we need not explore the question of whether the town has enforced its regulations in an arbitrary manner and what the legal effect of such arbitrary enforcement would be.

The defendant does not challenge the validity of the 1966 zoning regulations or of the adoption of the zoning map. Nor does he claim that the map was not incorporated with respect to any other provision of the regulations. He argues, instead, that the omission of Red Cedar Lake and the express enumeration of the other seven lakes in § 4.3a (1) of the zoning regulations exempts Red Cedar Lake from not only the seasonal dwelling restrictions, but all the regulations governing the lake districts, rendering the area unzoned. He further posits that the zoning map is merely supplemental and cannot prevail over the text of the zoning regulations.

At trial, the court, *Schimelman, J.,* agreed with the defendant and rejected the plaintiff's contention that Red Cedar Lake was zoned as a lake district. According to the trial court, because zoning regulations are in derogation of common law property rights, their construction is confined to a literal interpretation of their text. The court also stated that any ambiguity in the regulations must be resolved in the property owner's favor. Further, it rejected the plaintiff's argument that the zoning map compensated for the alleged oversight in § 4.3a (1) on the ground that there was no legislative history or other proof to substantiate that claim. It was the trial court's view that where a zoning map differs with the regulations, the map should be deemed supplemental to the text.

We conclude that the trial court's view of the interrelationship of the zoning regulations and zoning map is so restrictive as to thwart the intended effect of the town's zoning scheme and, taken to its logical conclusion, would achieve a result that benefits neither the town nor the defendant. Accordingly, we find its resolution of the map incorporation issue erroneous.

The principles governing interpretation of zoning regulations are well settled. Promulgation of zoning regulations is a legislative process, although local in scope. *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682, 136 A.2d 785 (1957). We interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent. *Harlow* v. *Planning & Zoning Commission,* 194 Conn. 187, 193–94, 479 A.2d 808 (1984); *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 56–57, 392 A.2d 491 (1978); *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 221, 348 A.2d 560 (1974); *Park Regional Corporation* v. *Town Plan & Zoning Commission,* supra. The words employed in zoning regulations are construed according to the commonly approved usage of the language. *Fisher* v. *Zoning Board of Appeals,* 143 Conn. 358, 361, 122 A.2d 729 (1956). Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms. *Park Construction Co.* v. *Planning & Zoning Board of Appeals,* 142 Conn. 30, 35, 110 A.2d 614 (1954). A property owner should be able reasonably to ascertain from the regulations how to use the property in compliance with them. *Shell Oil Co.* v. *Zoning Board of Appeals,* 156 Conn. 66, 70, 238 A.2d 426 (1968); *Lebanon* v. *Woods,* 153 Conn. 182, 191, 215 A.2d 112 (1965). Zoning regulations that carve out districts must afford adequate information to enable one to determine the properties comprising each district and the uses permitted and prohibited therein. *Lebanon* v. *Woods,* supra, 191–92.

Whenever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant. *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* 206 Conn. 595, 601, 539 A.2d 101 (1988); *Melody* v. *Zoning Board of Appeals,*

158 Conn. 516, 521, 264 A.2d 572 (1969). The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 557, 235 A.2d 643 (1967). When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results. *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 220–21, 448 A.2d 1344 (1982); *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524 (1958).

We have not before considered the interplay between a zoning map and the text of the regulations into which it has been incorporated. Some authorities posit that where a map has been incorporated in and made a part of zoning regulations, construction of a regulation requires that its text and the map be considered together. *Dumont Lowden, Inc.* v. *Hansen,* 38 N.J. 49, 54–55, 183 A.2d 16 (1962); *Martin* v. *Marble Cliff Quarries Co.,* 175 Ohio 454, 457–58, 196 N.E.2d 95 (1964); 82 Am. Jur. 2d 498, 500, Zoning and Planning § 68. Others maintain that a zoning map is merely supplemental to the text of a zoning enactment; *Lane County* v. *Heintz Construction Co.,* 228 Or. 152, 163, 364 P.2d 627 (1961); that the map depends, for its effectiveness, upon the ordinance that adopts it; *Wainwright* v. *Wheatridge,* 38 Colo. App. 485, 487, 558 P.2d 1005 (1976); and that its adoption or alteration does not itself constitute an exercise of zoning power. Id.; *Racine County* v. *Alby,* 65 Wis. 2d 574, 580–81, 223 N.W.2d 438 (1974).

We decline to discount the importance of a map made part of zoning regulations. We agree with the view that "[a] zoning map is an integral part of the zoning regulations, without which the regulations are said to be

meaningless"; 2 E. Yokley, Zoning Law and Practice (4th Ed. 1978) § 9-5, p. 43; and conclude that the official map, read together with the relevant zoning regulations, may serve to disclose the intention of the local zoning authorities. 5 P. Rohan, Zoning and Land Use Controls (1988) § 36.01 [8].

Our examination of the Lebanon zoning regulations, read together with the zoning map, discloses that the town intended them to cover all the property within its limits. The regulations create six discrete zoning districts and detail uses for each of them. Reference to the Lebanon zoning map is essential to determine the zone in which any parcel of property in the town lies. The text of the regulations does not set forth the extent of each zone but expressly, through § 3.2 of the regulations, incorporates the map to delineate the boundaries. Neither the text of the regulations nor the zoning map, standing alone, is sufficient to apprise a property owner of the uses permitted on his land. Any property owner wishing to ascertain the ways in which property may be used must locate the parcel on the map to determine its zoning classification and consult the text of the regulations to find the uses permitted. That the defendant was aware that his property was situated in a lake district zone and covered by § 4.3a (1) is evidenced by his application for a permit to build a seasonal dwelling, his acceptance of certificates of occupancy entitling him to seasonal occupancy, and his application for a variance to occupy his house on a year-round basis.

We are unconvinced by the defendant's argument that the apparent ambiguity of § 4.3a (1) compels the conclusion that Red Cedar Lake is not zoned. The regulation purports to impose its requirements on "any Lake District as shown on the Zoning Map." We are unpersuaded that the failure of the regulation to include Red Cedar Lake in its enumeration of lake districts

negates the effect of the quoted language. To ignore the reference to the zoning map, and hold that Red Cedar Lake is not zoned would be to contravene the purpose of the zoning scheme to regulate all the land within the town lines. Moreover, were we to agree with the defendant that his property was unzoned, it would avail him nothing since, under the zoning scheme established by the town, he would not be free to build as he chose on his land. The zoning regulations expressly list the uses permissible in each zone, and affirmatively prohibit all uses not specifically permitted. Since, in Lebanon, property may be used only in conformity with the zoning regulations, any failure to prescribe permissible uses for the land renders it unusable for any purpose until uses are authorized. *Park Regional Corporation* v. *Town Plan & Zoning Commission,* supra, 682–83.

Taking the text of the regulations and the zoning map together, we conclude that Red Cedar Lake was zoned as a lake district and that a property owner could reasonably ascertain that property in the Red Cedar Lake district was subject to the zoning regulations appertaining to lake district uses. This result is consistent with the town's intent, expressed by the overall zoning scheme, to regulate the uses of all the property within the town lines and to prescribe certain uses for lake districts. We are unpersuaded that Red Cedar Lake is differentiated from the other lake districts so designated on the zoning map except by its omission in the enumeration of lake districts in § 4.3a (1). We conclude that the failure to list Red Cedar Lake in the lake district regulation was, as the plaintiff contends, an oversight. Therefore, the trial court erred in holding that the zoning map was not incorporated into § 4.3a of the Lebanon zoning regulations.

We also agree with the plaintiff that the trial court abused its discretion in denying the relief requested.

Since the regulations prohibited year-round occupancy in a lake district on a lot of less than one acre, the defendant was clearly in violation of the zoning regulations. Ordinarily, the decision to grant or deny injunctive relief is within the sound discretion of the trial court. *Dupuis* v. *Submarine Base Credit Union, Inc.,* 170 Conn. 344, 356, 365 A.2d 1093 (1976); *Dimmock* v. *New London,* 157 Conn. 9, 18–19, 245 A.2d 569 (1968). When, however, the only reasonable conclusion is that the plaintiff is entitled to an injunction, this court may order its issue where the trial court has refused to do so. *Dimmock* v. *New London,* supra, 19. We so order, but leave the terms of the injunction, including the time for compliance, to the trial court. In addition to the injunction, the plaintiff sought attorney's fees, costs, a cash bond to ensure compliance, imposition of a civil penalty and any other relief deemed appropriate by the court. We also direct the trial court to consider the propriety of other relief.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render judgment for the plaintiff and grant an injunction and determine other appropriate relief.

In this opinion the other justices concurred.