[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiffs, Kenneth and Frances Clutz, from the decision of the Planning and Zoning Commission of the town of Farmington (hereinafter "the Commission") granting the application of the defendant, William Maier (hereinafter "Maier"), for a special permit and site plan approval for a proposed second building on 1789 New Britain Avenue.
On May 23, 1991, the defendant Maier submitted an application for a special permit and site plan approval to construct a second office building on 1789 New Britain Avenue in Farmington. The property consisting of an approximately 1.95 acre lot, is located on the corner of New Britain Avenue and Route 6 and is owned by Maier.
The Commission published notice of the public hearing on June 13, 1991 and June 20, 1991 in the Farmington News. In addition, the Commission sent notice to the plaintiff, Kenneth Clutz, on June 14, 1991. On June 14, 1991, a notification sign CT Page 8554 was posted upon the subject property.
On June 24, 1991, a public hearing was held by the Commission on Maier's application. At the hearing, the Commission heard testimony in support of the application by Peter Moran, attorney for the applicant, Ray Cragin a landscape architect, and James Woerz, the owner of a home two houses from the property. In addition, the Commission heard testimony from Rick Vaccaro, attorney for the plaintiffs, who opposed Maier's application. Following the hearing, the Commission approved Maier's site plan and special permit by unanimous decision.[1]
On July 3, 1991, notice of the granting of the special permit and the site plan approval by the Commission was published in the Farmington News.
The plaintiffs filed the instant appeal in the superior court and served the defendants pursuant to General Statutes8-8 on July 12, 1991. In their appeal, the plaintiffs allege that the Commission's decision was illegal, arbitrary and in abuse of its discretion in that: (1) the Commission had no authority to grant a special permit where no application for one had been filed prior to the public hearing as mandated by the Farmington on Zoning Regulations and the General Statutes; (2) the record is devoid of evidence to establish compliance with notice requirements of the Zoning Regulations; (3) the decision did not comply with General Statutes 8-3c in that it was not properly published; (4) the record lacks sufficient evidence to establish compliance with all standards set forth in the Zoning Regulations and to support the Commission's decision; and (5) the Commission violated the setback requirements for this lot as previously determined under the Zoning Regulations, illegally varied the setback requirements as previously determined, illegally modified an approved development plan for the lot, and illegally extended, altered or expanded nonconformities on this property.
Prior to 1986, 1789 New Britain Avenue was in an area zoned for residential use (labelled by the town as an R-20 zone). However, at that time, the Farmington Zoning Regulations permitted a professional office zone to be established in a residential zone by petition of an owner in accordance with certain procedures and a requirement that the land in issue contain at least four acres. On April 24, 1986, Maier petitioned the zoning board of appeals for a variance from the four-acre requirement to allow a professional office on a 1.95 acre lot. This variance was granted by the Commission on May 19, 1986.
Maier then petitioned the Commission for a zone change from R-20 to a professional office zone and for site plan approval CT Page 8555 for a 4,446 square foot office building. On May 27, 1986, the Commission approved the zone change and the site plan, which contained a single office building and established a sixty-five foot front yard running parallel to New Britain Avenue where the main entrance was located. It also established a thirty foot rear yard running parallel to the easterly lot line and a fifty foot side yard along the southerly lot line.
On March 23, 1989, Maier submitted an application to the Commission for approval of a site plan and a special permit for the construction of a second office building at 1789 New Britain Avenue. A public hearing on the matter took place on April 24, 1989, and on May 15, 1989, the Commission voted to approve Maier's application for a special permit and site plan. The plaintiffs appealed this decision to the superior court which sustained the Clutz's appeal on the ground that there was no evidence as to whether a notification sign was posted on the property in accordance with the Farmington Zoning Regulations. Clutz v. Planning and Zoning Commission, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 363049 (December 10, 1990, Smith, J.)
In December, 1987, the Commission amended its Zoning Regulations to require that:
 Where any Professional Office Zone adjoins any residential zone (excluding RDM), the minimum requirements for rear and side yards shall be doubled on the boundary adjacent to the residential zone.
To conform under this amendment, a building located in a professional office zone and bounding an adjacent residential zone must contain a sixty foot rear yard and one hundred foot side yards. In the present action, Maier's property abuts a residential zone on the easterly rear yard and on the southerly side yard. Thus, the amendment rendered the building constructed on the subject property nonconforming in that the rear yard was thirty feet less than the required sixty feet. The southerly side yard was not rendered nonconforming, however, because it could accommodate the increased requirement of one hundred feet.
On May 23, 1991, Maier applied again to the Commission for site plan approval and for a special permit to erect a second structure, a 4,500 square foot office building, on the property. The new site plan submitted by Maier, however, redesignated the front, rear and side yards of the property so that they differed from the yards as approved by the Commission in 1986. Under the CT Page 8556 new site plan, the northerly side yard of the property facing Route 6 has been redesignated as the front yard while the front and rear yards have been redesignated as side yards; the original southerly side yard has been redesignated as the rear yard. It is the Commission's approval of this application which is the subject of this appeal.
* * * * *
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning and Zoning Commission, 219 Conn. 303, 307,592 A.2d 953 (1991); DiBonaventure [DiBonaventura] v. Zoning Board of Appeals, 24 Conn. App. 369, 373, 588 A.2d 244 (1991).
General Statutes 8-8 (a) (1) defines the term "aggrieved person" as "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." In the present action, the plaintiffs undisputedly own property which abuts the subject property. Therefore, the plaintiffs are aggrieved, and may maintain this action.
A party taking an appeal must do so by commencing service of process within fifteen days from the date that notice of the decision was published. General Statutes 8-8 (b). In the present action, the decision of the Commission was published on July 3, 1991 and the plaintiff's appeal was served upon the clerk of the Town of Farmington on July 12, 1991 and upon the Commission, through the clerk of the Commission, on July 16, 1991. The plaintiffs' appeal is timely.
The trial court may only grant relief on an appeal from a decision of an administrative agency when the agency has acted illegally, arbitrarily, or in abuse of its decision. Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554, 573, 538 A.2d (1988). The court's role is to determine whether the record reasonably supports the conclusion reached by the agency. Primerica v. Planning and Zoning Commission, 211 Conn. 85, 96,558 A.2d 646 (1989); Burnham v. Planning and Zoning Commission,189 Conn. 261, 265, 455 A.2d 339 (1983); Stankiewicz v. Zoning Board of Appeal, 15 Conn. App. 729, 737, 546 A.2d 919 (1988), aff'd, 211 Conn. 76, 556 A.2d 1024 (1989). In addition, the agency's action is to be sustained if any one of the reasons stated is sufficient to support the decision. Primerica, supra, 96; Frito-Lay, Inc., supra 576.
Where a planning and zoning board has not provided reasons for its decision the court must review the record to determine a basis for the action taken. A.P. W. Holding Corp. v. CT Page 8557 Planning and Zoning Board, 167 Conn. 182, 186, 355 5 A.2d 91
(1974); Morningside Association v. Planning and Zoning Board,162 Conn. 154, 156, 292 A.2d 893 (1972); Stankiewicz, supra, 732. In the present action, where the Commission failed to give reasons for its decision, the court must review the record before the Commission "to determine whether it [the Commission] acted fairly or with proper motives or upon valid reasons." A.P. W. Holding Corp., supra, 186-87. "In searching the record, the trial court may rely on any reason culled from the record which demonstrates a real or reasonable relationship with the general welfare of the community in concluding that the board's decision should be upheld." Stankiewicz, supra, 733.
Plaintiffs first argue that Maier never applied for a special permit. Specifically, the plaintiffs contend that Maier had only checked off the section for site plan approval on the application form and that someone from the Commission checked off the section for special permit approval sometime after the public hearing. In support of their argument, the plaintiffs cite page 6 of the transcript of the public hearing:
 My name is Attorney Rick Vaccaro and I represent the abutting landowners, Kenneth and Frances Clutz. . . The first thing I'd like to point out is that in reviewing the application it appears that the only thing requested in the application is site plan approval and my reading of the regulations would seem to indicate that the application should also be for a special permit.
There is no other evidence on the record in support of this argument. In fact, a review of the record discloses that from the time the Commission received the application, it was treated as one for both site plan approval and a special permit. The published notice of the public hearing in the Farmington News states that the hearing is to be for "special permit and site plan approval for 4,500 sq. ft. general office building." The plaintiffs, moreover, were represented at the public hearing by counsel who stated that his clients opposed the application for special permit. Since the record lacks substantial evidence in support of the plaintiffs' allegations and since plaintiffs received constructive and actual notice of the application for special permit, the plaintiffs have not proven that the application for a special permit was not properly before the Commission.
In their brief in support of their appeal, plaintiffs argue that the record is devoid of evidence to establish compliance CT Page 8558 with the notice requirements of the Farmington Zoning Regulations. Plaintiffs argue that the certified mail receipts included in the record do not sufficiently establish that the owners of the property within 200 feet of the subject property received notice by mail of the public hearing. The plaintiffs further argue that even if the certified mail receipts constitute sufficient notice, the record does not contain a receipt showing that the plaintiff, Frances Clutz, ever received any certified mailing.
General Statutes 8-3c (b) provides that a "zoning commission may by regulation provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the hearing." Article IV, 12C2 of the Farmington Zoning Regulations mandates that:
 Notice of the public hearing by certified mail shall be mailed by the applicant no later than ten (10) days before such hearing to all owners of property located within 200 feet of any boundary of the property which is the subject of the application. Evidence of such mailing shall be presented to the Planning Department at or before the public hearing. . . .
The Supreme Court has distinguished between statutorily required notice to the general public and statutorily required notice to a specific individual. Lauer v. Zoning Commission,220 Conn. 455, 461, 600 A.2d 361 (1991).
 [F]ailure to give personal notice to a specific individual is not a jurisdictional defect . . . and . . "lack of personal notice may be waived by the party entitled to it." (Citations omitted.) . . .
 The purpose of a personal notice statute is to "give actual notice to [the person entitled to notice]." (Emphasis added.) (citation omitted.) Therefore, if a person has actual notice of a hearing, the failure to give mailed notice does not frustrate the purpose of the notice provision. (Citation omitted.)
(Emphasis in original.) Id., 462; see also Schwartz v. Hamden,168 Conn. 8, 357 A.2d 488 (1975); Koskoff v. Planning and CT Page 8559 Zoning Commission, 27 Conn. App. 443, 446, ___ A.2d ___ (1992).
It is irrelevant whether or not the plaintiffs received mailed notice of the public hearing since there is evidence on the record which establishes that the plaintiffs had actual notice of the hearing. The transcript of the public hearing reveals that the plaintiffs were represented by counsel who spoke on their behalf opposing Maier's application. The plaintiffs had actual notice of the public hearing and any failure to give a mailed notice is waived.
As to the sufficiency of the certified mail receipts to show that the other owners of property within 200 feet were mailed notice, plaintiffs lack standing to raise this issue. While those who have actual notice can nevertheless challenge a decision on grounds that required constructive notice was lacking; Lauer, supra, 462; they are not entitled to complain of a failure to give personal notice to others. Id., 465.
The plaintiffs also contend that the record is completely devoid of evidence to establish compliance with Farmington's notice requirement that "the applicant shall post a notification sign provided by the Planning Department on the property at least seven (7) days prior to the date of the public hearing." "When . . . notice [by posting] is required by a municipal ordinance duly adopted, compliance with that ordinance is required." Wright v. Zoning Board of Appeals, 174 Conn. 488,491, 391 A.2d 146 (1978). The plaintiffs argue that there must be some evidence on the record to establish that the posting of a notification sign occurred. The Commission submitted as part of the record an affidavit by Attorney Peter Moran stating that he posted a sign at the property. The plaintiffs argue that because the affidavit was dated after the public hearing, it is not properly part of the record.
All that is necessary for the Commission to have subject matter jurisdiction is that notice be posted, not that evidence of posting be included in the record of the public hearing. While Article IV, 12C2 of the Farmington Zoning Regulations specifically requires that evidence of mailings be presented at the public hearing, that same section does not require that evidence of the posting of a notification sign be presented at the hearing.[2] Furthermore, this is not a case where new or additional evidence on the merits of the application was added to the record after the date of the public hearing but rather one in which documentation of events which had already properly occurred was made after the hearing. The failure to present the affidavit at the public hearing does not prevent the Commission from having subject matter jurisdiction. The court concludes that notice was posted. CT Page 8560
The plaintiffs also argue that the Commission failed to publish notice of its decision in accordance with General Statutes 8-3c and that this renders the decision of the Commission null and void. General Statutes 8-3c(b) states:
 Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to the person who requested or applied for a special permit or special exception, by its secretary or clerk, under his signature in any written, printed, typewritten or stamped form, within fifteen days after such decision has been rendered.
Plaintiffs contend that the decision was published under the Commission Chairman's signature and not the signature of its secretary or clerk.
While the notice of decision may be flawed, "not all flaws in the notice are fatal." Cocivi v. Plan and Zoning Commission,20 Conn. App. 705, 708, 570 A.2d 226 (1990). A statute should not be interpreted so as to thwart its purpose. Builder's Service Corp. v. Planning and Zoning Commission, 208 Conn. 267,276, 545 A.2d 530 (1988). "the purposes of the statutory postapproval publication are to give notice to interested parties of the decision and to commence the start of the appeal period." R.B. Kent Son, Inc. v. Planning Commission, 21 Conn. App. 370,378, 573 A.2d 760 (1990).
In Gottier v. Somers Zoning Commission, 5 CTLR 221, 222-23 (November 14, 1991, Dunn, J.), the court was presented with a similar situation to the present action. In that case, the plaintiff argued that the notice of decision was invalid because the clerk or secretary of the Commission failed to sign it. In finding that the notice of the decision was adequate, the court held that
 "[t]he objectives of the statutes were met in that the public was notified of (1) the decision, (2) the Commission which made the decision, (3) the substance of the decision, and (4) the effective date of the amendment." Carr v. Planning and Zoning Commission, 1 CSCR 749, 750 (1986, Allen, J.) . . .
CT Page 8561 Additionally, regardless of whether the notice passes the test in Carr, no "defect [in notice] may be misleading."
(Citation omitted.) Gottier, supra, 223.
In the present action, the objectives of General Statutes8-3c have been met in that notice was made to interested parties (1) that a decision had been made, (2) that it was made by the Planning and Zoning Commission, (3) that the substance of the decision was that Maier's application for site plan approval and special permit was granted, and (4) that the effective date was immediate. In addition, the defect is not misleading. The appearance of the Chairman's or the signature of the secretary amounts to nothing more than a technical infirmity which does not thwart the objectives of the statute.
Plaintiffs claim that defendant Maier's application fails to comply with Article IV, 4 of the Zoning Regulations, which prohibits any obstruction to vision (including plantings) in a triangular area formed by the intersecting streets on a corner lot. That issue was not raised at the public hearing however, nor specifically assigned as error in the complaint, and is therefore not properly before the court. See Helm v. Welfare Commissioner, 32 Conn. Sup. 595, 605, 348 A.2d 317 (App. Sess. 1975) (citation omitted). "`To allow a court to set aside an agency's determination "upon a ground not theretofore presented . . . deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action."'" Valley View Convalescent Home, Inc. v. Commission on Hospitals, 32 Conn. Sup. 300, 302, 352 A.2d 317
(C.P. 1975), citing Hartford Electric Light Co. v. Water Resources Commission, 162 Conn. 89, 107, 291 A.2d 721 (1971). courts "do not sit de novo on civil cases for arguments that have not been raised in the agency whose action [they] are reviewing." (Citations omitted). Anacona v. Norwalk, 217 Conn. 50,54 n. 6, 584 A.2d 454 (1991). This court declines to entertain the issue.
The plaintiffs next argue that the Commission should not have granted defendant Maier's application because it violates the southerly side and easterly rear setback requirements established for this lot under the Zoning Regulations and the previously approved 1986 site plan. They assert that the setbacks were conclusively determined in connection with defendant's 1986 application, and that the Commission cannot reverse itself. They claim that the redesignation of the setbacks so as to make the southerly side yard a rear yard and the easterly rear yard a side yard constitutes the granting of illegal variances. Plaintiffs also argue that even if the CT Page 8562 setbacks may be redesignated as defendant Maier proposed, the plan would violate the frontage requirement applicable to the property and would constitute an extension of the original building's nonconformity.
With respect to corner lots, Article III, 3C of the Zoning Regulations allows an owner to designate which of the street lines shall serve as the front lot line:
 On corner lots a building shall be required to comply with the setback line on only one street front,. . . . The Commission shall determine at the time of subdivision application which of the street lines shall serve as the front or side lot lines. In the case where no subdivision is involved the property owner shall make such determination.
(Emphasis added). Defendant Maier designated the westerly lot line running parallel to New Britain Avenue as the front line when he was granted permission to construct the first building in 1986.
The site plan showing the proposed second office building indicates that the proposed building encroaches into the southerly side and easterly rear yards as established in 1986 and as doubled by the operation of the 1987 amendment to the zoning regulations. If, however, defendants are allowed to reconfigure the setbacks for purposes of the application at issue in this appeal, the application will comply with the setback regulations contained in Article II, 10C2.
The issue of whether each building on one lot may have its own front, rear and side yards was discussed in McCrann v. Town Plan Zoning Commission, 161 Conn. 65, 72-3, 282 A.2d 900
(1971). McCrann involved an appeal from approval of a site plan for elderly housing. The plaintiffs were abutting landowners and claimed that since the site plan called for four buildings, each must have its own front, rear and side yards, determined not by the existence of city streets, but by the location of each building on the parcel. The court resolved the issue solely by reference to definitions contained in the regulations:
 The regulations contain the following definitions: A front yard is "an open space extending across the full width of the lot between the front wall of the principal building and the front lot line." 104 (30). A rear yard is "an open space extending across the full width CT Page 8563 of the lot, between the rear wall of the principal building and the rear lot line" 104 (32). A side yard is "an open space extending from the front to the rear yard, between the principal building and side line of the lot." 104 (31). A lot is "a parcel of land occupied or to be occupied by a building or group of buildings and accessory buildings and including such open spaces as are required." 104 (17). From these definitions it appears that the property in question constitutes a lot and that this lot is to have one front yard and one rear yard. The contention of the plaintiffs that each of the buildings on the lot must have its own front, rear and side yards is not supported by the regulation.
Id.
 In the instant case, the following definitions apply:
 FRONTAGE: The distance between the side lot lines of a lot measured along an improved street. Where this line is an arc or the side lot lines converge towards this line, the distance may be measured along the minimum front yard set back line. . . .
 LOT: A parcel of land occupied or approved to be occupied by a building or buildings which meets the minimum requirements for frontage, lot width, and lot area for the zone in which it is located.
 YARD, MINIMUM FRONT: A space extending across the full width of the lot between the street line and a parallel line set back a distance equal to the front yard requirement. . . .
 YARD, MINIMUM REAR: A space extending across the full width of the lot between the rear lot line and a parallel line set back a distance equal to the rear yard requirement. On a lot with no rear yard, the side yard shall extend to the opposite lot line.
 YARD, MINIMUM SIDE: A space extending from the front yard to the rear yard between the side lot line and a parallel line set back a distance equal to the side yard requirement. On a lot CT Page 8564 with no rear yard, the side yard shall extend to the opposite lot line.
 YARD, FRONT: A space extending across the full width of the lot between the street line and the front of a principal building.
 YARD, REAR: A space extending across the full width of the lot between the rear lot line and the rear of a principal building.
In addition, Article II, 10C2b provides: "All principal buildings in a Professional Office Zone shall be no less than 50 feet from each other."
These regulations are similar to those at issue in McCrann. Both sets of regulations determine yard locations by reference to the principal building on the lot. Both indicate that a lot is to have one front yard and one rear yard. This is particularly apparent from the definitions of front and rear yards and minimum front and rear yards, which constitute the "space[s] extending from the front yard to the rear yard." Similarly, the minimum side yard is defined as a "space extending from the front yard to the rear yard." These definitions contemplate the establishment of yards which run the full length of the property and are not to be encroached upon by any building.
These regulations would be rendered meaningless if the yards could be determined anew for each proposed building. A zoning regulation should not be interpreted in a manner which thwarts its purpose or leads to unreasonable or bizarre results. Builders Service Corporation v. Planning Zoning Commission,208 Conn. 267, 276, 545 A.2d 530 (1988); Planning Zoning Commission v. Gilbert, 209 Conn. 696, 706, 546 A.2d 823 (1988).
Furthermore, only the zoning board of appeals, not the commission, has the power under the General Statutes and the Zoning Regulations to vary the application of the Regulations. General Statutes 8-6, Zoning Regulations, Article V, 4A3.
Hence the Commission acted improperly in approving defendant Maier's application because its action violates the established setbacks and attempts to redesignate the location of the front, rear and side yards in violation of the Regulations. The court need not reach the issue of whether the redesignation of the yards would run afoul of the frontage requirement or would expand a nonconformity.
Accordingly, judgment is hereby rendered in favor of the CT Page 8565 plaintiffs on their appeal.
BY THE COURT, Scheinblum, J.