[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs Theodore and Susan Tickell appeal pursuant to General Statutes 8-8 from the decision of the defendant Bridgewater Planning and Zoning Commission ("commission") denying the plaintiffs' application for a zoning permit to construct a rigid framed, fabric storage structure on their property.
The final decision of the commission denying the plaintiffs' application for a zoning permit was published in the New Milford Times on April 22, 1993. (Return of Record, Item 5, Plaintiffs' complaint, Par. 5; Defendant's answer, Par. 1.) On May 6, 1993, plaintiffs served the commission by leaving a copy of the citation, recognizance and appeal with the Bridgewater town clerk at the town clerk's office and the chairman of the commission at his home. (Sheriff's Return) The original citation, recognizance, and appeal were filed with the court on May 11, 1993.
On September 20, 1993, the commission filed an answer essentially denying the material allegations of the appeal. Also, on September 20, 1993, the defendant filed the return of record with the court. Both parties have timely filed the appropriate memoranda with the court.
The plaintiffs are the owners of residential property located in Bridgewater. (Plaintiffs' complaint, Par. 2) On March 3, 1993, the plaintiffs submitted to the commission an application for a trailer storage and screening permit, pursuant to Bridgewater zoning regulations 2.2.2.f, which would allow them to erect a CT Page 1417 rigid-framed, vinyl covered storage structure (known as a "COVERIT") on their property. (ROR, Item 1.)
On April 14, 1993, at its regular meeting, the commission denied the plaintiffs' application, on the basis that the Bridgewater zoning regulations did not permit the erection of temporary structures. (ROR, Item 4, minutes of the April 14, 1993 meeting; ROR, Item 5, notice of decision.)
A. Aggrievement
The plaintiffs' allege aggrievement. (Plaintiff's complaint, Par. 6.) Aggrievement is a jurisdictional question. Winchester Woods Associates v. Planning and Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953
(1991). "Unless the plaintiff alleges and proves aggrievement, his case must be dismissed. . . . Aggrievement presents a question of fact for the trial court." Fuller v. Planning Zoning Commission, 21 Conn. App. 340,343, 573 A.2d 1222 (1990). The owner of the property subject to the appeal is classically aggrieved. See Winchester Woods Associates, supra, 308; Bossert Corporation v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39
(1968). The plaintiffs have alleged and the defendant admits that the plaintiffs own the property subject to the appeal. (Plaintiffs' complaint, Par. 1; Defendant's answer, Par. 1.) Therefore, the plaintiffs are aggrieved.
B. Timeliness
General Statutes 8-8 (b) through (e) requires the aggrieved party appealing from the decision of a planning and zoning commission to commence service of process "by leaving a true and attested copy of the process with or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality" within fifteen days from the date that the notice of the commission's decision was published. General Statutes 8-8 (b).
The commission's final decision was published in the New Milford Times on April 22, 1993. (Return of Record, Item 5; Plaintiffs' complaint, Par. 5; Defendant's CT Page 1418 answer, Par. 1.) On May 6, 1993, plaintiffs caused a sheriff to serve a true and attested copy of the citation, recognizance and appeal on both the Bridgewater town clerk at the town clerk's office and the chairman of the commission at the chairman's home. (Sheriff's Return). The original citation, recognizance, and appeal were filed with the court on May 11, 1993. The plaintiffs' appeal was served within the fifteen (15) day period required by General Statutes 8-8 (b) and, therefore, the appeal is timely.
V. Scope of Review.
A trial court may not substitute its judgment for that of the administrative tribunal. Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554, 572-73,538 A.2d 1039 (1988).
 [A zoning commission]. . . is endowed with a liberal discretion, and its actions are subject to review by the courts only to determine whether they were unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board [the courts] therefore review the record to determine whether there is factual support for the board's decision, not the contentions of the applicant.
Pleasant View Farms Development, Inc. v. Zoning Board of Appeals, 218 Conn. 265, 269-70, 588 A.2d 1372 (1991); see also Frito-Lay, Inc. v. Planning and Zoning Commission, supra, 573.
 [I]t is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would CT Page 1419 have reached the same conclusion but whether the record before the agency supports the decision reached.
(Citations omitted.) Primerica v. Planning and Zoning Commission, 211 Conn. 85, 96, 558 A.2d 646 (1989). Generally, the court is limited to the evidence contained in the return of record. General Statutes 8-8 (k). "When a zoning authority has stated the reasons for its action, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision." (Citations omitted; internal quotation marks omitted.) Horn v. Zoning Board of Appeals, 18 Conn. 674,676, 559 A.2d 1174 (1989). The action of the administrative agency should be sustained if even one of the stated reasons is sufficient to support it. Frito-Lay, Inc. v. Planning Zoning Commission, supra, 576.
VI. Merits of the Appeal
The sole reason given by the commission for the denial of the camper storage permit was that the "[r]egulations do not specifically permit temporary structure [sic]." (ROR, Item 5, Legal Notice.) During the public hearing, the commissioners stated that the regulations authorizing trailer storage and landscape screening did not permit the plaintiffs to erect a fabric type, temporary structure such as the COVERIT. (ROR, Item 4.) Therefore, this appeal requires an examination of the Bridgewater zoning regulations authorizing camper storage and landscape screening on residential property.
Section 2.2.2.f, pertaining to the storage of campers and utility trailers, provides as follows:
 Campers . . . may be stored in the open on the premises, but shall be out of view from the street, behind the building setback line, and adequately landscaped in accordance with Sec. 2.2.3.5.b or 2.2.3.5.d. A permit for such use shall be obtained from the Commission.
Section 2.2.3.5.b, pertaining to the requirements for landscape buffers, provides as follows: CT Page 1420
 A landscape screen shall consist of a solid opaque wall or fence of uniform color, constructed of a permanent materials of suitable appearance, or evergreen planting, to form a visual barrier, with a top not less than 5 feet or more than 8 feet above the ground level to be screened.
Although a zoning authority's interpretation of a particular land use regulation is entitled to some deference; Roy v. Centennial Insurance Co., 171 Conn. 463,473, 370 A.2d 1011 (1976); Coppola v. Zoning Board of Appeals, 23 Conn. App. 636, 640, 583 A.2d 650 (1990); the interpretation of an ordinance is a question of law for the courts. Robinson v. Unemployment Security Board of Review, 181 Conn. 1, 6, 434 A.2d 293 (1980); Coppola v. Zoning Board of Appeals, supra. Zoning regulations are in derogation of the common law, and therefore must be strictly construed and not extended by implication. Schwartz v. Planning Zoning Commission, supra, 153. Zoning regulations are to be interpreted in accordance with ordinary rules of statutory construction, and when the language used is clear and unambiguous, the court cannot by construction read into them provisions that are not cleary stated. Id. The court must "interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent." (Citations omitted.) Planning Zoning Commission v. Gilbert, 208 Conn. 696, 705, 546 A.2d 823 (1988). Also, zoning ordinances should be read as a whole and construed in a manner rendering the ordinance effective and workable, rather than bizarre and unreasonable. Id., 705-06. The words used in zoning ordinances are construed according to the ordinary usage of language. Id., 705.
The plaintiffs argue that the commission erroneously decided that the COVERIT was a temporary structure. In order to store their camping trailer on their property, the plaintiffs must comply with 2.2.2.f, which permits the storage of a camping trailer on a residential lot provided the use is "in accordance with 2.2.2.f. As noted above, 2.2.3.5.b requires a landscape screen "consist[ing] of a solid opaque wall or fence of uniform color, constructed of permanent materials . . . to form a CT Page 1421 visual barrier, with a top not less than 5 feet nor more than 8 feet above the ground level to be screened."
A landscape screen pursuant to Regulation 2.2.3.5.b requires a solid fence or wall constructed of permanent materials. The American Heritage Dictionary, supra, p. 924, defines the term "permanent" as something "[f]ixed and changeless; lasting or meant to last indefinitely . . . [n]ot expected to change in status, condition or place." The ordinary meaning of the terms "fence" and "wall" indicate a planar or two-dimensional structure, erected upright to form an uncovered enclosure or barrier, with the structure's width being of a relatively consistent and narrow dimension in comparison to its height or length. See American Heritage Dictionary, supra, p. 497 (definition of "fence"). When 2.2.3.5.b is read as a whole, the requirement that the fence or wall be solid and constructed from permanent materials dictates a fence constructed in such a manner and of such materials rendering the structure to be fixed to the ground and unalterable, i.e., constructed in a manner that the fence is to be committed to the location on which it is constructed.
The commission could have found that the brochure submitted with the application depicts a curved, enclosed structure with one thin, arched, fabric wall attached with stakes to the ground at both ends of the arch and rising to twelve (12) feet in the center. (ROR, Item 1.) The commission could also have found that the walls of the COVERIT are not solid, but consist of flexible polyester fabric, which facilitates the impermanent, portable nature of the COVERIT. (ROR, Item 1.) In addition, the brochure included in the record indicates that the structure's maximum life span is twenty (20) years. (ROR, Item 5.) The brochure also notes that the COVERIT is a "portable structure" and a "quick solution to any shelter or storage need," stressing the portable, temporary nature of the COVERIT. (ROR, Item 1.) The commission's decision that the COVERIT is a temporary structure is also supported by the stake-type system utilized by the COVERIT to secure it to the ground, and the fabric sheathing, which allows the COVERIT to be quickly disassembled and removed. (ROR, Item 1.) The COVERIT does not comply with 2.2.3.5.b's requirement CT Page 1422 that a landscape barrier be constructed of permanent materials. Therefore, the commission's decision that the COVERIT was a temporary structure not permitted by the regulations was not clearly erroneous.
As additional grounds for their appeal, the plaintiffs essentially argue that commission's denial of their application was an abuse of discretion because the COVERIT constitutes a garage, which is a permitted "accessory use" in the plaintiffs' zone and the Bridgewater zoning regulations neither prohibit the use of a temporary structure as a garage nor dictate that a garage be permanent.
The plaintiffs' application before the commission sought permission for "camp trailer storage under a COVERIT," not permission to construct a garage. (ROR, Item 1.) although the plaintiffs' application does not even mention the term "garage," the plaintiffs essentially argue that the application should be construed as an application to construct a garage on their property, which will be used for camp trailer storage. The plaintiffs' attorney represented at the public meeting that the application was for "both trailer storage and [landscape] screening," but mentioned nothing about permission to erect a garage. (ROR, Item 4.)
Accordingly, the court may find that since the commission never had reason or opportunity to consider the application as art application for a garage, the court need not review the denial of the application as a denial of an application to construct a garage. See Horn v. Zoning Board of Appeals, supra. In addition, even if the application could be construed broadly as an application to construct a garage — as the plaintiffs' argument suggests — the commission's decision that the COVERIT was a temporary structure, and thus not permitted by the regulations, was not clearly erroneous.
The Bridgewater regulations permit any "accessory uses" in a residential zone. Bridgewater Zoning Regulations, 2.2.1.f. The regulations define the term "building" as a "structure intended for shelter, housing or enclosure of persons, animals or materials . . . A principal building is one that contains the major CT Page 1423 permitted use. An accessory building is one that contains a minor use customarily incidental to the major use." Bridgewater Zoning Regulations 1.2.a.
The American Heritage Dictionary, Second College Edition, p. 215, defines building as "[s]omething that is built; structure, structure usually implying considerable size and emphasizes physical make-up with respect to material and design." (Emphasis added.) The common and ordinary meaning of the word "building," as used in the regulations, refers to a structure constructed according to conventional building methods and of conventional materials such as wood and concrete, permanently affixed to the ground by a conventional foundations system.
To characterize the COVERIT as a garage would conflict with the conclusion that the regulations refer to the common definition of building, i.e. a permanent structure constructed according to conventional methods and of conventional materials. Based on the evidence in the record indicating that the COVERIT was a temporary, light-weight, portable structure, the decision of the commission that the regulations did not permit such temporary structures, such as the COVERIT, was not clearly erroneous.
The denial of the plaintiffs' application by the zoning commission was not an abuse of discretion or clearly erroneous. Therefore, the plaintiffs' appeal is dismissed.
DRANGINIS, J.