[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The City of Waterbury and Vincent Viggiano, the City's zoning enforcement officer, bring this action pursuant to General Statutes § 8-12 to enforce a cease and desist order issued by Viggiano to the defendant Phoenix Soil, LLC. The plaintiffs contend that the height of Phoenix Soil's smokestack exceeds 95 feet, the allegedly applicable height limitation in the Waterbury Zoning Code. On April 22, 1999, the court held a CT Page 7392 hearing on the plaintiffs' request for a temporary injunction restraining Phoenix Soil from using or operating the smokestack until such time as it complies with the allegedly applicable height restriction.
The material facts are not in dispute. Phoenix Soil operates a soil remediation business at leased premises known as 130 Freight Street in Waterbury. (The co-defendant, Ridan Enterprises, Inc. is the owner of the property.) Phoenix Soil thermally treats contaminated soil in a building with a tall smokestack. The parties have stipulated that the smokestack is between 117 and 118 feet in height. The property is located in the IG (general industrial) zone.
On March 26, 1999, the plaintiff Viggiano issued a cease and desist order to Phoenix Soil, claiming that the smokestack was in violation of the City Zoning Code because it exceeded the maximum height permitted in the IG zone, which he claims is 95 feet. Phoenix Soil appealed the cease and desist order to the zoning board of appeals. The appeal caused a stay of the cease and desist order pursuant to General Statutes § 8-7. The plaintiffs then brought this action pursuant to General Statutes § 8-12 to enforce the cease and desist order.
In order to obtain a temporary injunction, the moving party generally must show each of the following:
1. imminent substantial and irreparable injury;
2. lack of an adequate remedy at law;
3. a likelihood of success on the merits; and
 4. a balancing of the equities that favors granting the injunction.
Waterbury Teachers Assn. v. Freedom of Information Commission,230 Conn. 441, 446 (1994). A plaintiff's failure to establish any one of these elements precludes temporary injunctive relief.
The plaintiffs have the burden of showing the court that they are likely to succeed on their claim at a full trial on the merits. They must therefore demonstrate to the court that the cease and desist order was properly issued because of a violation of the Waterbury Zoning Code. CT Page 7393
Section 159.037 of the Waterbury Zoning Code provides that with certain exceptions, no structure can be erected that exceeds the height limits established in the zoning code. Among these exceptions are smokestacks, chimneys, flagpoles and other ancillary structures. Section 159.037 further provides that "[n]o structure may be erected to exceed by more than 15 feet the height limits of the district in which it is located. . ." (Emphasis added.) There is no dispute that a smokestack comes within the definition of "structure" in the zoning code and that the property at issue is in the IG zone.
The purpose of the IG zone is "to provide for the location of the intensively developed, older, heavier types of industry." Waterbury Zoning Code, Section 159.095(A). Section 159.095(E)(1) sets forth the height limitations for the IG zone as follows:
(1) Height.
 (a) A maximum of four stories or 80 feet, whichever is lesser.
 (b) For corporate industrial offices or general industrial offices, there shall be a maximum of eight stories or 100 feet, whichever is lesser.
Clearly, there are at least two different height limits within the IG zone, 80 feet and 100 feet. Viggiano testified that he inferred that the maximum smokestack height is 15 feet above the height limit for the "principal use" of the property. Because the Phoenix Soil property has an industrial use, he determined 80 feet to be the maximum building height and he declared a zoning violation because the smokestack exceeds 95 feet in height. On cross examination, Viggiano acknowledged that Section 159.037 does not specifically refer to the height limit of the "principal use," but rather to "the height limits of thedistrict in which it is located." (Emphasis added.) He nevertheless maintained his opinion that a zoning violation exists.
Zoning regulations are in derogation of common law property rights. Two rules of construction therefore apply. First, zoning regulations cannot be construed to include or exclude by implication what is not clearly within their express terms. CT Page 7394Planning Zoning Commission v. Gilbert, 208 Conn. 696, 705
(1988); Dowling v. Zoning Board of Appeals, 187 Conn. 689, 694
(1982). Secondly, exemptions in favor of the property owner should be liberally construed in his or her favor. Goldreyer v.Board of Zoning Appeals, 144 Conn. 641, 646 (1957); Devaney v.Board of Zoning Appeals, 143 Conn. 322, 326 (1956). When ambiguous language is used in a zoning ordinance, its meaning and scope may be found by examining the language in the light of other provisions in the ordinance, by ascertaining the object sought to be accomplished and by considering all other relevant circumstances. Pascale v. Zoning Board of Appeals,150 Conn. 113, 117 (1962)
It is clear that the plaintiffs' interpretation of Section 159.037 ignores the express wording of the section. The first part of the last sentence of § 159.037 reads, "No structure may be erected to exceed by more than 15 feet the heightlimits of the district in which it is located . . ." (Emphasis added.) The plaintiffs' interpretation, based on the principal use of the property or the height of the building, disregards the express words "height limits of the district." The language of an ordinance should be construed so that no words are found to be superfluous or insignificant. Essex Leasing, Inc. v.Zoning Board of Appeals, 206 Conn. 595, 601 (1988)
The plaintiffs' interpretation further depends upon importing words that are not expressly included. The plaintiffs refer to the height limit "of the principal use" or "of the building," words that are not expressly included. This is not proper construction of a zoning ordinance. Planning ZoningCommission v. Gilbert, supra, 208 Conn. 705; Dowling v. ZoningBoard of Appeals, supra, 187 Conn. 694.
Proper analysis of the wording that is at issue begins with the express terms used and their context in the zoning code. Section 159.037 sets forth three requirements for ancillary structures. All three are found in the last sentence of the section, which reads
 No structure may be erected to exceed by more than 15 feet the height limits of the district in which it is located; nor shall structures have a total area greater than 10% of the roof area of the building; nor shall the structure be used for any residential purpose or any commercial or industrial purpose other CT Page 7395 than a use incidental to the principal use of the building.
As noted above, the first provision, concerning the height of ancillary structures, is based on the height limits "of the zoning district . . ." These words are clear.
The second and third provisions, relating to total roof area and use, read differently, referring to the roof area "of the building" and "the principal use of the building." If the legislative body that enacted the zoning code intended the meaning urged by the plaintiffs, that "height limits" refers to the height limit "of the building" or the height limit of "the principal use of the building," it could very well have said so. This is especially true given the fact that the other two provisions in the very same sentence do refer to "the building" and "the principal use of the building."
It is significant that Section 159.037 refers to "the height limits of the district" in which the structure is located. (Emphasis added.) The plaintiffs' interpretation fails to account for the use of the plural, "height limits . . ." The use of the plural in reference to "height limit" is a clear acknowledgment of the fact that a particular zoning district, such as the IG zone as we have here, might have more than one height limit. There is, however, no attempt in this zoning regulation to restrict the applicable height limit to any one of the height limits within the district. In the absence of such language, any of the height limits within the zoning district can be used as the height limit from which the 15 feet is to be measured. The express wording of the code section permits no other construction.
The reasonableness of this construction of Section 159.037 is further shown by a consideration of the practical effect of the interpretation offered by the plaintiffs. The IG zone is comprised of intensively developed, old industrial buildings. Buildings of two different heights are permitted within the zone: 80 feet and 100 feet. If the plaintiff's interpretation of Section 159.037 were correct, the smokestack height of Phoenix Soil would be limited to 95 feet — 5 feet below the maximum building height for the district, with the result that effluent from the smokestack could readily enter windows or other ventilation systems of nearby buildings that are 100 feet in height. It is more reasonable to interpret Section 159.037 CT Page 7396 as permitting the smokestack to rise 15 feet from the maximum building height for the zoning district in order to reduce the risk of effluent entering adjacent buildings. As the consulting engineer for Phoenix Soil testified, a higher smokestack results in lower ground level concentrations of effluent from the stack.
The plaintiffs have not sustained their burden of showing that they are likely to succeed on the merits of their claim that the Phoenix Soil smokestack is in violation of Section 159.037 of the Waterbury Zoning Code because it is higher than the alleged maximum applicable height of 95 feet. Therefore, the plaintiffs' application for a temporary injunction restraining the use of the smokestack is denied.
VERTEFEUILLE, J.