[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. PROCEDURAL HISTORY
Plaintiffs Wine and Liquor Junction, Inc. ("Junction") and CT Page 398 David B. Casey, in separate actions, appeal pursuant to General Statutes 8-8 from the decision of the defendant Milford Zoning Board of Appeals ("ZBA"), issued pursuant to General Statutes 8-6
et seq. on December 9, 1992, upholding the issuance of a certificate of zoning compliance to the defendant Tower Shopping Plaza Associates ("TSPA").
The final decision of the ZBA, dated December 11, 1992, was published in the Milford Citizen on December 11, 1992. Plaintiff Junction served the ZBA and the City of Milford on December 23, 1992, by leaving the appeal papers with both the city clerk at the city clerk's office and the ZBA's clerk at the ZBA's office. The Junction appeal was filed with the superior court on December 30, 1992. Plaintiff Casey served the ZBA and the City of Milford on December 21, 1992, by leaving the appeal papers with both the city clerk at the city clerk's office and the ZBA's clerk at the ZBA's office. The Casey appeal was filed with the superior court on December 29, 1992.
On January 15, 1993, defendant ZBA filed in both actions a motion to consolidate and the motions were granted by the court, Flynn, J., on February 1, 1993. On January 28, 1993, defendant TSPA filed in both actions a motion to be made a party defendant, which was granted by the court, Flynn, J., on February 29, 1993, and an order was issued to have the plaintiffs amend their complaints to include TSPA as a named defendant. Both plaintiffs Casey and Junction filed amended complaints on April 20, 1993 and served the complaints on the defendant TSPA. Because both appeals involve the identical issues of fact and law, both appeals will be addressed by this one memorandum of decision.
On March 26, 1993, defendant ZBA filed in the Casey action an answer and special defenses alleging lack of aggrievement and lack of subject matter jurisdiction due to the plaintiffs' alleged failure to exhaust their administrative remedies. On April 26, 1993, defendant ZBA filed in the Junction action an amended answer and special defenses identical to those filed in the Casey action. TSPA filed this amended answer and special defense in order to correct several technical errors in the first answer and special defense, originally filed by the ZBA in the Junction action on March 26, 1993. On April 16, 1993, defendant TSPA filed in the Casey action an answer and special defenses identical to those filed by the ZBA. On April 29, 1993, the defendant TSPA filed in the Junction action an answer and special defenses identical to those of the ZBA. The ZBA filed the return of record in both CT Page 399 actions on March 24, 1993. The plaintiff Junction filed identical replies denying the special defenses of the ZBA and TSPA on May 7 and 14, 1993, respectively. The plaintiff Casey filed only one reply to the identical special defenses of both defendants, but the reply did not address the defendants' second special defense regarding aggrievement. The plaintiffs filed a joint memorandum of law in both actions on July 16, 1993. On August 31, 1993, the defendants filed in the junction action a joint memorandum of law in response to the plaintiffs' memorandum; however, the defendants did not file a copy of their memorandum in the Casey action.
On June 7, 1993, pursuant to General Statutes 8-8 (k)(2), the ZBA moved in both actions to present as additional evidence the original certificate of zoning compliance issued on July 17, 1992, and the motions were granted by the court, Jones, j., on June 29, 1993. On July 27, 1993, defendant TSPA moved in both actions to introduce additional evidence consisting of photographs of Lawmen Road, the Tower Shopping Plaza, and the surrounding area. The motions were granted on October 28, 1993. The consolidated appeals were heard by the court, Jones, J., on October 28, 1993 in one hearing.
II. ISSUE
The issue in this appeal centers upon the validity of a certificate of zoning compliance issued to the defendants TSPA for their property at 470 Bridgeport Avenue known as Tower Shopping Plaza ("plaza"), a shopping plaza in excess of 40,000 square feet. On July, 15, 1992, the TSPA applied for a certificate of zoning compliance from the Planning and Zoning Office of the City of Milford in order to use several units of the plaza as a liquor store. The application for the certificate indicated that the distance from the nearest public entrance of the plaza to the common boundary line of the city-owned recreational park and tennis courts, located across Bridgeport Avenue and at the bottom of Lawmen Road, was 438 feet. Based upon the information included in the application, the Assistant City Planner Peter Crabtree issued the certificate ("July certificate") on July 17, 1992.
Lawmen Road is a narrow strip of city-owned property located across from the TSPA's plaza. The parcel, which runs perpendicular to Bridgeport Avenue and connects Bridgeport Avenue with the city-owned tennis courts located behind Jonathan Law High School, is fully paved and has been open to public travel and use for over 18 years. The portion of Lawmen Road closer to Bridgeport Avenue is CT Page 400 bordered on both sides by shopping plazas, and the parcel provides these shopping plazas additional access to Bridgeport Avenue. Lawmen Road is maintained by the Milford Public Works Department; the Board of Education maintains the tennis courts. The parcel was acquired in 1940 as part of the larger parcel of property now containing the recreational fields and tennis courts behind the high school. The deed granting the property to the city, however, does not restrict the property to recreational use. On or about August 26, 1992, and again on September 1, 1992, Attorney Robert Cohen wrote to Peter Crabtree on behalf of plaintiff Casey and Fairway Liquor Mart, a liquor store owned by Casey, objecting on two grounds to the issuance of the July certificate. First, Cohen noted that the public entrance of TSPA's plaza was less than 400 feet from the entrance of Lawmen Road. Attorney Cohen contended that Lawmen Road, never having been formally accepted as a road by the Board of Alderman, was therefore a part of the lot containing the playing fields and tennis courts behind Jonathan Law High School and, thus, Lawmen Road was park or playground property. Attorney Cohen argued, therefore, that the certificate was issued in violation of 5.4.1.2, of Milford's Zoning Ordinance which requires any shopping center selling liquor robe located in excess of 400 feet from any public park, playground or school. Second, Attorney Cohen contended that the issuance of the certificate to such a large liquor outlet as contemplated by TSPA would drive several of the local family owned liquor stores, owned coincidentally by both David Casey and Junction, out of business.
In response to these letters and his own investigation, Peter Crabtree revoked the certificate on September 3, 1992, stating that Lawmen Road, the entrance to the tennis courts, was within 400 feet of the public entrance of the TSPA plaza, and therefore, the July certificate was not in compliance with 5.4.1.2. Defendant TSPA appealed the revocation to the ZBA.
On October 2, 1992, City Planner Wade E. Pierce reissued a certificate of compliance ("October certificate") to the TSPA, noting that this certificate was issued to correct the recision of the July certificate, which Pierce believed was erroneously rescinded because Lawman Road has been a public highway for over 18 years. Both plaintiffs David Casey and Junction, appealed the reissuance of the certificate to the ZBA. On November 6, 1992, both parties requested that the appeals be combined before the ZBA in order to avoid duplication of testimony and argument and on November 10, 1992, a single public hearing was held on both of the appeals. On December 9, 1992, the ZBA upheld the reissuance of the CT Page 401 certificate of compliance.
III. JURISDICTION
A. Aggrievement
The defendants deny the plaintiffs' allegations of aggrievement. In addition, both defendants allege by way of special defenses that the plaintiffs are not aggrieved.
Aggrievement is a jurisdictional question. Winchester Woods Associates v. Planning and Zoning Commission, 219 Conn. 303, 307,592 A.2d 953 (1991). "Unless the plaintiff alleges and proves aggrievement, his case must be dismissed. . . . Aggrievement presents a question of fact for the trial court." Fuller v. Planning Zoning Commission, 21 Conn. App. 340, 343, 573 A.2d 1222
(1990).
 In cases involving the sale of alcoholic beverages, the Supreme Court has held that the status of the appellants as taxpayers in the community entitled them to prosecute the appeal. When traffic in liquor is involved, a resident taxpayer is, a priori, an aggrieved person with standing to prosecute an appeal; he need not show that he has an interest peculiar to himself.
(Emphasis added; citations omitted.) Edelson v. Zoning Commission,2 Conn. App. 595, 597, 481 A.2d 421 (1984); see also Macaluso v. Zoning Board of Appeals, 167 Conn. 596, 600-01, 356 A.2d 885
(1975); Dolan v. Zoning Board of Appeals, 156 Conn. 426, 428,242 A.2d 713 (1968).
Plaintiff David Casey testified at the hearing before this court that he owned shares in a corporation that owned Fairway Plaza and Fairway Liquors, located on the Post Road in Milford, Connecticut, and that the corporation paid property taxes to Milford. David Casey also testified that he owned a home in Milford, in which he lived, and that he paid Milford property taxes on the residence. Carmine Testi, president of the plaintiff Junction, testified on behalf of Junction that the corporation did not own any real property in the town of Milford, but rather rented the real property and the building in Milford in which the business was located. Carmine Testi testified, however, that the CT Page 402 corporation paid property taxes on the personal property of the business located in Milford, such as the business's inventory and fixtures. Neither David Casey nor Carmine Testi offered any documentary evidence to substantiate his testimony.
At the hearing, the defendants argued that the plaintiffs had failed to sustain their burdens of proof on the issue of aggrievement because they presented no documentary evidence in support of their testimony. A similar argument was rejected by the Supreme Court in Winchester Woods, supra, 308, where the plaintiff in that case testified that he had an ownership interest in the land subject to the appeal, yet submitted no documentation in support of this contention. The Supreme Court held that "[g]iven the court's role to find facts and weigh credibility, there was sufficient evidence [by way of the plaintiff's testimony] before the court as to the plaintiff's status as owner of the property for the court to conclude that the plaintiff was aggrieved."
In regard to plaintiff Junction, however, the court must determine whether a corporation doing business in the community, renting the real property on which the business is located and conducted, but owning the personalty of the business and paying property taxes to the town on that property, is a "resident taxpayer" for the purpose of the liquor permit aggrievement rule noted above. See Macaluso v. Zoning Board of Appeals, supra, 600-01; Dolan v. Zoning Board of Appeals, supra, 428; and Edelson v. Zoning Commission, supra, 597. Apparently this is an issue of first impression in Connecticut.
The rationale for the liquor permit aggrievement rule is that
 [e]very owner of property, assessed in the grand list of the town in which he resides, has a substantial interest in the prosperity and good order of that town. The expense of the local police of any town, as well as the criminal proceedings before its local tribunals, is largely dependent on the number of the liquor saloons and bar rooms within its limits, and the character of those who keep them. If [liquor] licenses are granted with too free a hand, or without proper discrimination, the burdens of taxation are likely to be increased. Every taxpayer therefore has a certain, though it be a small, pecuniary CT Page 403 interest in having the license law well administered; and if he is also a resident in the town where he pays his taxes, he has an additional interest, common to every citizen, in promoting the general welfare of the community. In view of these considerations, we think that any resident taxpayer of a town who feels aggrieved at the granting of a license for the sale of liquors therein, has the right to appeal.
O'Connor v. Board of Zoning Appeals, 140 Conn. 65, 71-72,98 A.2d 515 (1953), quoting Beard's Appeal, 64 Conn. 526, 534, 30 A. 775
(1894); see also Hartford Distributors, Inc. v. Liquor Control Commission, 177 Conn. 616, 621 n. 2, 419 A.2d 346 (1979); see also Macaluso v. Zoning Board of Appeals, supra, 600-01. As Chief Justice Brown noted in the 1953 O'Connor opinion, regarding the purpose behind the liquor permit aggrievement rule,
 [i]t is a matter of common knowledge that a large percent of today's serious crimes stems from the excessive use of alcohol and that the hazard to life and limb from intoxication has been tremendously increased by the advent of present day automobile traffic.
O'Connor v. Board of Zoning Appeals, supra, 71; see also Macaluso v. Zoning Board of Appeals, supra, 600-01 (noting that the policy and purpose behind the liquor permit aggrievement rule are still valid in contemporary times).
In Zuckerman v. Board of Zoning Appeals, 144 Conn. 160,128 A.2d 325 (1956), the Supreme Court, without discussion held that a liquor store owner who was not a resident of the town in which the appeal was brought, but owned real property and personalty consisting of a liquor store located in the town, was an aggrieved party for the purpose of the liquor permit aggrievement rule. Therefore, the plaintiff could appeal the granting of a variance awarded to another liquor store in the town. Id. The court noted that "[a]lthough the plaintiff is not a resident of [the town], he is a taxpayer of that town and, as such, is an aggrieved person under the circumstances of [the] case." (Emphasis added.) Id. The Zuckerman case indicates that the controlling factor for the establishment of "resident taxpayer" status for the purpose of liquor permit aggrievement is the payment of taxes on real and CT Page 404 personal property owned by the plaintiff and assessed in the grand list of the town. See Tyler v. Board of Zoning Appeals, 145 Conn. 655,660-61, 145 A.2d 832 (1958). This court finds that both the plaintiff's ownership of property and the ongoing business interests in the community satisfy the pecuniary and general interest in the community required by the Beard rule. Id.; see O'Connor v. Zoning Board of Appeals, supra, 71-72.
The reasoning of the court in Zuckerman is explained in Tyler v. Board of Zoning Appeals, supra, 661, in which the court notes that
 [t]he essence of the holdings in Beard's Appeal, supra, and the cases which have followed it [such as O'Connor and Zuckerman], is that to be an aggrieved person within the meaning of [General Statutes 8-8] one must show a pecuniary interest injuriously affected by the action of the zoning board of appeals and that such a showing may be sufficiently made, in a case where liquor traffic is involved, by proof that one is a taxpayer in the town, in view of the pecuniary effect upon every taxpayer resulting from the incidents of such traffic. Such a distinction recognizes, again, that in liquor traffic there is a possible source of danger to the public which is not inherent in other businesses and that therefore such traffic warrants distinctive and particular treatment.
See also Dolan v. Zoning Board of Appeals, supra, 428 (holding that plaintiffs' status "as taxpayers in the community entitles them to prosecute [the] appeal"); and see M. R. Enterprises, Inc. v. Zoning Board of Appeals, 155 Conn. 280, 281-82, 231 A.2d 272 (1967) (noting without comment that corporation located in the community was a resident taxpayer for the purposes of the liquor permit aggrievement rule).
The above noted cases all concern taxpayers who owned real property in the town in which the liquor permit was granted. It should be noted that although the plaintiff Junction owns and pays taxes on the personalty of the liquor store, and all the taxable property located in the town is owned in furtherance of the business, it does not own the real estate on which the store is CT Page 405 located. Therefore, the issue becomes whether Junction's status as a lessee of the real estate on which the business is located places it outside the scope of the liquor permit aggrievement rule.
In Primerica v. Planning and Zoning Commission, 211 Conn. 85,94-95, 558 A.2d 646 (1989) the court held that the owners of property, who had sold the property while the appeals were pending in the trial court but had retained a ten year lease in a portion of the property, retained enough of an interest in the property to be aggrieved for the purpose of General Statutes 8-8. Id., citing Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146,365 A.2d 387 (1976) (lessee found without comment to be an aggrieved party); Nielsen v. Board of Appeals on Zoning, 129 Conn. 285,27 A.2d 392 (1942) (same proposition); see also 4 Anderson, American Law of Zoning, 27.13, p. 495 (3d ed.) and cases cited therein. The court noted that
 the extent to which a party with an interest in the property other than that of an owner is aggrieved depends upon the circumstances of each case, because the concept of standing is a practical and functional one designed to ensure that only those parties with a substantial and legitimate interest can appeal.
(Citations omitted.) Primerica v. Planning and Zoning Commission, supra; 93. The court held that it was not the duration of the tenancy that was controlling, but rather whether the tenant was more than a mere tenant at will, and therefore the plaintiffs' ten year lease was a sufficient interest in the property to render the plaintiffs aggrieved. Id., 94-95.
It should be noted that Primerica did not involve liquor permit aggrievement, but rather classical aggrievement. Primerica v. Planning and Zoning Commission, supra, 94-95. Nevertheless, as noted in Dolan v. Zoning Board of Appeals, supra, 428, Zuckerman v. Board of Zoning Appeals, supra, 164, O'Connor v. Board of Zoning Appeals, supra, 72, the determinative factor in the liquor permit aggrievement cases is the plaintiff's status as a taxpayer and an owner of property and business interests in the community, as contrasted to physical residence, although all of these cases concerned plaintiffs who owned real property in the community. As noted by the New York court, however, regarding the standing of leaseholders, CT Page 406
 [a] lease-holder may however, have the same standing to challenge municipal action as the owner. A change in contiguous or closely proximate property obviously can as readily affect the value and enjoyment of a leasehold as the underlying ownership interest.
Sun-Brite v. Board of Zoning, 69 N.Y.2d 406, 414-15,508 N.E.2d 130, 134 (1987) citing, inter alia, 4 Anderson, supra, 27.13. Therefore, the court must determine whether a corporation doing business in the community and paying property taxes on the business's personal property located in the community, but leasing the real property of the business, may be an aggrieved party for the purposes of the liquor permit aggrievement rule. See Primerica v. Planning Zoning Commission, supra; Dolan v. Zoning Board of Appeals, supra, 428, Zuckerman v. Board of Zoning Appeals, supra, 164, O'Connor v. Board of Zoning Appeals, supra, 72.
If the court answers this question in the affirmative, it may find Junction to be an aggrieved party under the liquor permit aggrievement rule. On the other hand, if the court finds that the plaintiff Junction is not an aggrieved party for the purpose of the liquor permit aggrievement rule, it is submitted that the Junction appeal should be dismissed for lack of subject matter jurisdiction.
B. Timeliness
General Statutes 8-8(b) requires the appeal to be served on the agency and the municipality within fifteen days from the publication of the notice of the board's decision. The final decision of the ZBA, dated December 11, 1992, was published in the Milford Citizen on December 11, 1992. (Casey's Complaint, para. 4; Junction's Complaint, para. 2.; Answer, para. 1.) The plaintiff junction served the ZBA and the City of Milford on December 23, 1992, (Sheriff's Return) and filed the Junction appeal with the court on December 29, 1992. The plaintiff Casey served the ZBA and the City of Milford on December 21, 1992, (Sheriff's Return) and filed the Casey appeal with the superior court on December 30, 1992. It is submitted that both appeals were served within the fifteen day period required by General Statutes 8-8(b) and, therefore, the appeals are timely.
C. Exhaustion of Administrative Remedies CT Page 407
By way of special defense, both defendants assert that the court has no jurisdiction over this appeal because the plaintiffs failed to appeal to the ZBA the granting of the July permit as required by General Statutes 8-7, but rather persuaded Crabtree, through Attorney Cohen's correspondence, to revoke the July certificate. (ROR, Item u.) The defendants argue that the revocation of the July permit and later issuance of the October permit were unauthorized and void, and therefore, the October certificate is invalid and the July certificate is still in full effect. Therefore, the defendants argue that because the plaintiffs failed to appeal the granting of the July certificate to the ZBA, they have failed to exhaust their administrative remedies.
"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the superior court will obtain jurisdiction to act in the matter." Connecticut Mobile Home Assn., Inc. v. Jensen's, Inc., 178 Conn. 586,424 A.2d 285 (1979). "If the court has no jurisdiction because the plaintiffs had failed to exhaust their administrative remedies, the action must be dismissed." Concerned Citizens of Sterling v. Sterling, 204 Conn. 551, 556-57, 529 A.2d 666 (1987). However, it is submitted that if the July certificate was properly revoked, the defendants' exhaustion of administrative remedies argument should be rejected. See Caserta v. Zoning Board of Appeals, 219 Conn. 352, 362, 593 A.2d 118 (1991) (Caserta II) where the Supreme Court held that ZEO's legally improper revocation of zoning permit based on the order of chairman of the planning and zoning committee effectively revoked the permit and was therefore an "order" properly appealable to ZBA).
The general rule with regard to the authority of a zoning officer to revoke a permit is as follows: "An issuing officer may revoke an improperly issued permit, or one issued upon misrepresented information. Revocation need not be preceded by a full evidential hearing, but the permittee must be informed of the reasons and afforded an opportunity to respond." (Footnotes omitted.) Anderson, 3 American Law of Zoning, 19.02, p. 313-14 (3d Ed., 1986); see also 82 Am.Jur.2d, Zoning Planning, 244, p. 775; Caserta II, supra, 362.
The record discloses that Zoning Enforcement Officer David Crabtree issued the July certificate based only upon the representation of the setback distances included in TSPA's application, and only after personal investigation did Crabtree revoke the permit based upon his assumption that it was improperly CT Page 408 issued.
The October certificate was issued by the City Planner, Pierce, and none of the parties contest his authority to issue a certificate of compliance. The plaintiffs have properly appealed the granting of this certificate to the ZBA, in accordance with General Statutes 8-7 and, therefore, the plaintiffs have exhausted their administrative remedies and the court has subject matter jurisdiction over the appeals of the ZBA's decision upholding the October certificate. Cf. Concerned Citizens of Sterling v. Sterling, 204 Conn. 551, 556-57, 529 A.2d 666 (1987).
IV. SCOPE OF REVIEW
A trial court may not substitute its judgment for that of the administrative tribunal. Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988).
 [A] zoning board of appeals is endowed with a liberal discretion, and its actions are subject to review by the courts only to determine whether they were unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, [the courts] therefore review the record to determine whether there is factual support for the board's decision, not the contentions of the applicant.
Pleasant View Farms Development, Inc. v. Zoning Board of Appeals,218 Conn. 265, 269-70, 588 A.2d 1372 (1991).
The Supreme Court recently outlined the standard of review applicable in the review of an appeal to a zoning board of appeals from the decision of a zoning enforcement officer.
 [F]ollowing an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and on the record before the board.
Caserta v. Zoning Board of Appeals, 226 Conn. 80, 82, 626 A.2d 744
(1993) (Caserta IV). The zoning board of appeals hears an appeal CT Page 409 from a decision of the zoning enforcement officer de novo, and upon the appeal of the ZBA's decision to the superior court, the "action of the zoning enforcement officer that is subject to appeal is entitled to no special deference by the court." (Footnote omitted.) Id., 88-89.
V. MERITS OF THE APPEAL
The plaintiffs offer two grounds to sustain the appeals. First, the plaintiffs argue that the ZBA's decision should be overturned because an alternate member of the board, Peter Carrol, was not present at the hearing on the appeal but participated in and voted on the ZBA's final decision. Second, the plaintiffs argue that the October certificate was issued in violation of setbacks required by Milford Zoning Ordinances 5.4.1.2 and, therefore, the decision of the ZBA in upholding the certificate was arbitrary, illegal and void.
A. Absent Hearing Officer
Both parties agree that alternate ZBA member Peter Carrol was not present at the ZBA's consolidated public hearing on both plaintiffs' appeals held on November 10, 1992.
 Connecticut law does not deprive an absent commissioner from voting if he acquaints himself sufficiently with the issues raised, the evidence presented and the arguments made during his absence so that he can make an informed judgment. . . . It was the plaintiffs' burden to prove that [the commissioner] did not sufficiently acquaint himself with the proceedings that took place during his absence. . . . Although reviewing the verbatim transcript is perhaps the best way for an absent commissioner to appraise himself of the proceedings during his absence, it is not the only way. For example, the commissioner might review a prepared summary of the evidence if one is available.
(Citations omitted.) Brunswick v. Inland Wetlands Commission,29 Conn. App. 634, 640-41, 617 A.2d 466 (1992); see also Lauer v. Zoning Commission, 220 Conn. 455, 470, 600 A.2d 310 (1991). "There is a strong presumption of regularity in the proceedings of a CT Page 410 public body such as a municipal [zoning board]." Murach v. Planning Zoning Commission, 196 Conn. 192, 205, 491 A.2d 1058 (1985). "Whether . . . a member [of a zoning board] has sufficiently discharged his obligation to acquaint himself is in the first instance a question of fact for the trial court." (Citations omitted.) Lauer v. Zoning Commission, supra.
The plaintiffs concede that all of the evidence and information considered by the ZBA was admitted at the November 10, 1992 public hearing. (Plaintiffs' Brief, p. 9.) The record contains 25 exhibits consisting of maps, deeds and letters that were introduced at the public hearing and were available for review by board member Carrol. Also, there was available to Carrol both an 88 page verbatim transcript of the public hearing and the official minutes of the meeting which summarized the testimony and arguments offered at the public hearing. (ROR, Items mm and nn). Much of the oral testimony was duplicative of the written information submitted to the ZBA. (ROR, Item nn.)
The plaintiffs rely on Brunswick v. Inland Wetlands Commission, supra, in support of their argument that, because there are at least 82 references to inaudible testimony in the 88 page verbatim transcript, Carrol could not have properly acquainted himself with the record and should not have participated in the ZBA's decision, thus rendering the ZBA's decision void. In Brunswick, however, a commissioner of the Bethany Inland Wetlands Commission ("IWC") missed one of the several days of hearings on a subdivision application, a day at which much evidence and testimony was given. Id., 640. The transcripts of the hearings were undated, making it difficult to determine which section of the transcript pertained to the missing day. Id., 641 n. 5. In addition, the court noted that the transcripts were unintelligible, missing entire paragraphs of testimony constituting witnesses' answers to the commission's questions. Id., 641 n. 6. The trial court found that the commissioner had fulfilled his obligation to acquaint himself with the issues of the hearing by reviewing only an unintelligible tape of the proceeding, and that the commissioner relied on no other method of review. Id., 641. The appellate court held that the commissioner did not adequately perform his duty to acquaint himself with the issues of the hearing because he only relied on a concededly unintelligible tape recording of the proceeding and, therefore, the trial court's decision upholding the IWC was reversed. Id., 641-42. The appellate court noted that the plaintiffs had sustained their burden of proof by introducing the unintelligible transcript of the proceeding. Id. CT Page 411
In the present case, the plaintiffs merely refer in their brief to unspecified portions of the 88 page transcript which note inaudible comments of the witnesses. The plaintiffs have not pointed to any specific deficiencies in the transcript, nor did they offer any additional evidence indicating that Carrol failed to acquaint himself with the issues of the appeal. Furthermore, in the transcript of the ZBA's business meeting, Carrol notes that he reviewed the transcripts and evidence. Because in this case there is a substantial record and the extensive evidence before the ZBA on which Carrol could have relied, the present case is factually distinguishable from Brunswick v. Inland Wetlands Committee, supra. In addition, a review of the transcript in this case indicates that the inaudible testimony referred to by the plaintiffs consists of minor omissions, such as single words missing from otherwise large sections of legible testimony. In addition to the transcript, the official minutes of the public meeting and the evidence before the ZBA provide a substantial summary of the testimony and arguments presented to the ZBA, upon which Carrol could have relied to familiarize himself with the issues presented by the appeal. See Brunswick v. Inland Wetlands Commission, supra, 640-41.
This court finds that the plaintiffs have not met their burden of showing that Carrol did not adequately familiarize himself with the issue of the appeal. See Loh v. Planning and Zoning Commission, 161 Conn. 32, 42-43, 282 A.2d 894 (1971) (plaintiffs admitted no evidence and therefore failed to sustain burden of showing that commissioner did not familiarize himself with the issues of the appeal); Grillo v. Board of Appeals, 4 Conn. App. 205,207, 493 A.2d 275 (1985) (lack of evidence submitted by plaintiffs was sufficient ground to hold that board member adequately familiarized himself with the issues of appeal). Accordingly, plaintiffs' appeals is not sustained on this ground.
B. Validity of the Certificate
In upholding the issuance of the October certificate, the ZBA was faced with two issues. First, the ZBA had to determine whether the Milford Zoning Regulations, 5.4.1.2. ("ordinance") required a 400 foot setback between either the public entrance of the shopping center and the common lot lines shared by the liquor store and the protected use or between the public entrance and the actual boundary of the protected use within the lot. Second, the ZBA had to determine whether Lawmen Road was actually a public highway or park property under the ordinance. Although the ZBA discussed both CT Page 412 issues before making its decision, the record is unclear as to whether the ZBA relied upon the conclusion that Lawmen Road was public highway or upon the conclusion that the ordinance required a 400 foot setback from the common boundary line or the actual protected use in making its decision to uphold the granting of the October certificate. When the zoning authority has not stated the reasons for its decision, the trial court must review the record to determine whether the decision is supported by the evidence before the authority. A.P. W. Holding Corp. v. Planning Zoning Board,167 Conn. 182, 186, 355 A.2d 91 (1974); see also Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339
(1988).
If the ordinance is construed to require 400 feet between the public entrance of the shopping center and the actual use — here, the actual border of the tennis courts — the ZBA's decision should be upheld. If the ordinance requires a 400 foot setback between the public entrance and the common lot line of the protected use, then the ZBA's decision should be upheld only if Lawmen Road is not a part of the park property.
1. Construction of Regulations.
Milford Zoning Regulations 5.4.1.2., reads as follows:
 Except where specifically exempted by these regulations, no establishment selling or serving alcoholic liquor shall be located on any lot within a distance of 300 feet measured in a straight line between the nearest lot lines of any public park or playground; public parochial or private nonprofit school; place of worship; public library, auditorium, theater, or other public assembly place; or hospital or other duly authorized health institution. . . .
 In any shopping center exceeding 40,000 square feet notwithstanding the foregoing, an establishment selling or serving alcoholic liquor may be located at least 400 feet from the uses listed [above].
 The required distance (400 feet) shall be measured from the nearest public entrance door of the proposed liquor establishment (closest point to closest point in a straight line) to the nearest common boundary line shared by the above listed uses. . . . CT Page 413
All parties agree that this case is controlled by paragraph two, because the plaza is in excess of 40,000 square feet. The defendants argue, however, that paragraph two requires the 400 foot setback to be measured between the nearest public entrance of the plaza and the actual use, i.e. the tennis courts, and not the lot line of the property on which the protected use is located. The defendants further argue that the third paragraph, which requires the setback to be measured from the shopping center's public entrance to the "shared common boundary line," only applies when the two properties share a common boundary line, and in other instances the setback is measured from the entrance to the use. The plaintiffs, however, argue that the second paragraph only establishes a 400 foot setback for large shopping malls, and the third paragraph requires that setback to be measured from the public entrance of the shopping center to the boundary line of the lot on which the protected use is located.
As noted, the record is unclear as to whether the ZBA upheld the October certificate on the basis of the construction of 5.4.1.2 or on their characterization of Lawmen Road as a public highway. Although the a zoning board's interpretation of a particular land use regulation is entitled to some deference; Roy v. Centennial Insurance Co., 171 Conn. 463, 473, 370 A.2d 1011
(1976); Coppola v. Zoning Board of Appeals, 23 Conn. App. 636, 640,583 A.2d 650 (1990); the interpretation of an ordinance is a question of law for the courts. Robinson v. Unemployment Security Board of Review, 181 Conn. 1, 6, 434 A.2d 293 (1980); Coppola v. Zoning Board of Appeals, supra. Zoning regulations are in derogation of the common law, and therefore must be strictly construed and not extended by implication. Schwartz v. Planning 
Zoning Commission, supra, 153. Zoning regulations are to be interpreted in accordance with ordinary rules of statutory construction, and when the language used is clear and unambiguous, the court cannot by construction read into them provisions that are not clearly stated. Id. The court must "interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent." (Citations omitted.) Planning 
Zoning Commission v. Gilbert, 208 Conn. 696, 705, 546 A.2d 823
(1988). Also, zoning ordinances should be read as a whole and construed in a manner rendering the ordinance effective and workable, rather than bizarre and unreasonable. Id., 705-06. The words used in zoning ordinances are construed according to the ordinary usage of language. Id., 705.
Read as a whole, the ordinance establishes a scheme that CT Page 414 provides for a general setback of 300 feet measured between lot lines, and in the case of a liquor store located in the a shopping center greater than 40,000 square feet, the second paragraph increases the setback to 400 feet. The third paragraph of the ordinance requires the 400 foot setback established by paragraph two to be measured from the nearest public entrance of the shopping center to the "nearest common boundary line shared by the property," as opposed to lot line to lot line. The court concludes that the common usage of the term "common boundary line" refers to the lot lines of the property on which the protected use is located, and not the point on the property at which the actual protected use begins.
With the 300 foot setback provided by paragraph one there must be an intervening lot between the protected use and the liquor store of at least three hundred feet. See 5.4.1.2, 1 ("no establishment . . . shall be located on any lot within a distance of 300 feet measured . . . between the nearest lot line of any [protected use]"). Paragraph three, however, allows the lots to abut, provided the public entrance of the shopping center is in excess of 400 feet from the shared common boundary line of the lots. This construction of the ordinance is supported by the fact that the second paragraph contains no direction on the method of measurement, as does the first and third paragraphs (e.g. "measured in a straight line"), which indicates that the second paragraph merely operates to increase the distance of the setback and leaves the third paragraph to dictate how to measure the 400 foot distance.
The ordinance requires the setback to be measured from the lot line of the protected use and not the actual use itself. Therefore, it must be determined whether Lawmen Road is a public highway or public park property. If Lawmen Road is not a public highway, but park property, the lot line for the park property would be at the point where Lawmen Road connects with Bridgeport Avenue and, therefore, the lot line would be less than 400 feet from the public entrance to the plaza. If this is the case, the October certificate would have been issued in violation of 5.4.1.2.
C. Public Park or Public Road
The legal definition of words used in an ordinance, such as the definition of a public highway, is a question of law for the courts; whether Lawmen Road does or does not satisfy that CT Page 415 definition is a question of fact which must be reviewed under the arbitrary and clearly erroneous standard. Jeffery v. Planning 
Zoning Board, 155 Conn. 451, 454, 232 A.2d 497 (1967); Langbein v. Board of Zoning Appeals, 135 Conn. 575, 579, 67 A.2d 5 (1949).
The plaintiffs argue that publicly owned property cannot become a public highway unless there is a formal acceptance of the property pursuant to General Statutes 13a-48. The plaintiffs therefore assert that because Lawmen Road is public property, and was never formally accepted as a public highway by the board of aldermen, it could not be characterized as a public highway. Therefore, the plaintiffs argue that the ZBA's decision was arbitrary, unreasonable, and unlawful. The plaintiffs also argue that the action of the board of alderman in granting easements over the property, and the action of the planning and zoning commission in not enforcing the building setbacks against the abutting property owners indicates that the property is not a public road. The defendants cite to evidence in the record indicating that Lawmen Road has been accepted as a public highway.
 The Supreme Court has defined a public highway as a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle. . . . [T]he essential feature of a highway is that it is a way over which the public at large has a right to pass and in contradistinction to a private way, over which only a limited number of persons have the right to pass. . . .
(Citations omitted.) Wamphassuc Pt. Prop. Owners Assn. v. Public Utilities Commission, 154 Conn. 674, 681, 228 A.2d 513 (1967); See also E. Sostman J. Anderson, The Highway and the Right of Way: An Analysis of the Decisional Law in Connecticut, 61 Conn. B.J. 299, 300 (1987) (key factors in determining a public highway are (i) road subject to state or municipal control and (ii) road open to public travel). There are several ways in Connecticut by which property may become a public highway. Under General Statutes13a-48 a municipality either by way of a vote at an annual or special meeting or by way of a properly authorized board of selectmen may accept a road as a public highway. In addition to the statutory scheme provided for the creation of public highways, the Supreme Court has noted that
[f]rom the earliest times, under the common law, highways CT Page 416 have been established in this state by dedication and acceptance. . . . Both the owner's intention to dedicate the way to public use and acceptance by the public must exist, but the intention to dedicate the way to public use may be implied from the acts and conduct of the owner, and the public acceptance may be shown [i.e. implied] by proof of the actual use of the way by the public.
(Citations omitted.) Wamphassuc Pt. Prop. Owners Assn. v. Public Utilities Commission, supra. "Two elements are essential to a valid dedication: (1) a manifested intent by the owner to dedicate the land involved for the use of the public; and (2) an acceptance by the proper authorities or general public." Meshberg v. Bridgeport City Trust Co., 180 Conn. 274, 279, 429 A.2d 865 (1980). In Meshberg, the court noted that implied acceptance may be shown through the acts of a municipality in paving, plowing, maintaining or improving a street or through the acts of the public through their long term use as a public highway. Id., 282-83.
The plaintiffs cite American Trading Real Estate Properties, Inc. v. Trumbull, 215 Conn. 68, 78, 574 A.2d 769 (1990) in support of their argument that the publicly owned land cannot be characterized as a public highway absent formal acceptance pursuant to General Statutes 13a-48. However, the Supreme Court in American Trading, did not hold that publicly owned property cannot be dedicated to use as a public highway. Nor did the court's language foreclose the use of implied dedication for publicly owned land.
A city may dedicate public lands to use as a public highway. In Branford Partner v. Branford, Superior Court, judicial district of New Haven, Docket Number 311708 (April 30, 1993), the court, Hodgson, J., noted that a municipality could dedicate publicly owned property to use as a public highway if certain facts exist that indicate the municipality dedicated property to full public use as a public highway, such as if the city had no restrictions on the public use of the property and designated the property as a public highway. In Branford Partner, however, these facts were not present and the court did not find dedication by the city. In the present case, both parties contend that the property is open to public use, albeit they disagree about the character of that public use. The record contains evidence that Lawmen Road was deeded to the city in 1940 without any restrictions. (ROR, Item n.) All publicly owned property is presumed to be held for public use, CT Page 417 unless the plaintiff presents evidence that the property was not held for public use. American Trading Real Estate Properties, Inc. v. Trumbull, supra, 79-82.
Because, however, there has been no formal acceptance pursuant to General Statutes 13a-48 of Lawmen Road as a public highway, Lawmen Road could be a public highway if the facts indicate that there was an implied dedication and acceptance. See Meshberg v. Bridgeport City Trust Co., supra, 280. The question of whether there have been a valid dedication and acceptance, either formally or implied, is a factual one.
The record contains nothing indicating that the board of alderman formally accepted Lawmen Road as a public highway. There was evidence in the record that the city in 1940 obtained the fee to Lawmen Road under the same deed for the property on which the tennis courts and playing fields behind Jonathan Law High School were located, although there were no restrictions in the deed. Also, most importantly, the board of aldermen granted to the adjacent property owners easements over Lawmen Road, and the planning and zoning commission did not enforce set back restrictions for the properties along side Lawmen Road. In addition, the plaintiffs also cite to a deed executed by the mayor and the board of alderman for the sale of city property abutting Lawmen Road, wherein the deed referred to Lawmen Road as city property, rather than a public highway. (ROR, Item kk.)
The Milford ZBA also had the following evidence before it on which to base its decision upholding the issuance of the October certificate. The Milford Director of Public Works had for the past 18 years represented to the State Department of Transportation that the parcel was a public road and the city therefore received and accepted reimbursement from the state for the cost of plowing. The Town Engineer had made numerous representations to the Department of Transportation to the effect that Lawmen Road was a public highway, and it appears that the Director of Public Works and the Town Engineer, as well as the State Department of Transportation, all treat the property as a public highway. The ZBA also received evidence that Lawmen Road was maintained by, and under the jurisdiction of the Department of Public Works, as opposed to the Board of Education, which maintains the recreational property such as the tennis courts and playing fields behind Jonathan Law High School. In addition, the public may use the Lawmen Road to enter the neighboring properties, as well as the tennis courts. Also, Lawmen Road is not the main entrance to the recreational properties CT Page 418 of which the plaintiffs claim Lawmen Road is a part, but rather the main public entrance is through Concord Avenue. The record contains no evidence that the public's right to use Lawmen Road is restricted in any way.
The court finds that the evidence in the record supports the conclusion that Lawmen Road is a public highway. Therefore, the decision of the ZBA that Lawmen Road is not a public park or playground was not clearly erroneous.
VI. CONCLUSION
For all the foregoing reasons, the plaintiffs' appeals are dismissed.
Clarance J. Jones, Judge
The Court acknowledges the assistance of Mr. John F. Kerwin III in the preparation of this memorandum.