[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
October 11, 2001, by way of a letter to the commission, the Wiznias filed an application on requesting a special permit to create lot 20, a rear lot in a proposed twenty-five lot subdivision named Walnut Grove Estates. (Return of Record [ROR], Item Q.) The proposed subdivision application was filed separately on May 3, 2001. (ROR, Item A.) The commission received the special permit application on November 5, 2001 (ROR, Item FF); and a public hearing was held on November 19, 2001. (ROR, Item V.) At a December 17, 2001 meeting, the commission voted, by majority, to deny the application. (ROR, Item AA, p. 3.) The Wiznias timely commenced this appeal on January 8, 2002, challenging the commission's decision.
 JURISDICTION
General Statutes § 8-8 (b) provides in pertinent part that "any person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located." "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama, Inc. v.Zoning Board of Appeals, 195 Conn. 276, 283, 487 A.2d 559 (1985).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." (Internal quotation marks omitted.) Harris v. Zoning Commission,259 Conn. 402, 409, 788 A.2d 1239 (2002). Aggrievement is a factual issue, "and credibility is for the trier of the facts." (Internal quotation marks omitted.) Quarry Knoll II Corp. v. Planning ZoningCommission, 256 Conn. 674, 703, 780 A.2d 1 (2001). An owner of property that is the subject of an application is aggrieved for the purpose of CT Page 3919 bringing an appeal and a plaintiff may prove aggrievement at the time of trial; Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308, 592 A.2d 953 (1991); or "by the production of the original documents or certified copies from the record." (Internal quotation marks omitted.) Quarry Knoll II Cog. v. Planning ZoningCommission, supra, 703.
In the present appeal, the Wiznias allege aggrievement as the owners of the property affected by the commission's decision. (Appeal, ¶¶ 1, 2.) At trial, Robert Wiznia testified that he and his wife have owned, and continue to own, the property affected by the commission's decision. The Court finds the Wiznias have sufficiently alleged and proven aggrievement.
Timeliness and Service of Process
General Statutes § 8-8 (b) provides in relevant part that an "appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (f) provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
At trial, the parties stipulated to the fact that the commission's decision was published in the New Haven Register on December 27, 2001. This appeal was commenced by service of process on the town clerk, Stephanie Ciarleglio, and the Woodbridge Planning and Zoning Commission clerk, Kristine Sullivan, on January 8, 2002. The Court finds the appeal was commenced in a timely fashion by service of process on the proper parties.
 SCOPE OF REVIEW
"The Superior Court's scope of review is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal."RR Pool Patio v. Zoning Board of Appeals,257 Conn. 456, 470, 778 A.2d 61 (2001). "The [commission's] decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given . . . The evidence . . . to support any such reason [however] must be substantial." (Internal quotation marks omitted.) Heithaus v. Planning Zoning Commission, 258 Conn. 205, 221, 779 A.2d 750
(2001). "The credibility of witnesses and the determination CT Page 3920 of issues of fact are matters solely within the province of the [administrative] agency." (Internal quotation marks omitted.) DeBeradinisv. Zoning Commission, 228 Conn. 187, 198, 635 A.2d 1220 (1994).
"[E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Heithaus v. Planning Zoning Commission, supra, 258 Conn. 221. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks omitted.) DeBeradinis v. ZoningCommission, supra, 228 Conn. 200. "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." (Internal quotation marks omitted.) Francini v. Zoning Boardof Appeals, 228 Conn. 785, 791, 639 A.2d 519 (1994).
"When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision . . . Rather, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Citation omitted; internal quotation marks omitted.)Harris v. Zoning Commission, supra, 259 Conn. 420. "The [decision] must be sustained if even one of the stated reasons is sufficient to support it . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 208. "[C]ases in which we have held that the agency rendered a formal, official, collective statement involve circumstances wherein the agency couples its communication of its ultimate decision with express reasons behind that decision." Harris v. Zoning Commission, supra, 420-21.
A letter of notification of decision addressed to the Wiznias from the commission reveals that the reason for the majority vote denying the special permit application was that the "proposed use of rear Lot #20 was not made necessary by any unusual features peculiar to the land in CT Page 3921 question as set forth in Section 3.43(b)" of the Woodbridge zoning regulations. (ROR, Item FF.) The Court finds the commission issued a "formal collective statement of reason for its actions." Bloom v. ZoningBoard of Appeals, supra, 233 Conn. 208.
 DISCUSSION
As set forth above, the commission denied the Wiznias' special permit application to "allow Lot 20, as identified and shown on the [proposed] subdivision application, as a rear lot." (ROR, Item Q.) The proffered reason for the denial was that the "proposed use of rear Lot #20 was not made necessary by any unusual features peculiar to the land in question as set forth in Section 3.43(b)" of the Woodbridge zoning regulations. (ROR, Item FF.)
The Wiznias appeal on the basis that the commission acted illegally, arbitrarily, and in abuse of its discretion in that the application conformed with the subdivision and zoning regulations and should, therefore, have been approved; and the commission's denial was inconsistent with prior approvals of rear lots in other subdivisions.[1]
(Appeal, ¶ 7.)
Lot 20 is part of Walnut Grove Estates, a proposed twenty-five lot subdivision of an approximately seventy-three acre parcel (ROR, Item U3C); which is located off of Northrop, Ansonia and Racebrook Roads in the town of Woodbridge. (ROR, Item A.) The property is located within a zone A district (ROR, Item J1F, p. 2); which permits single-family residential buildings. (ROR, Item GG, p. 15.)
 I
The Wiznias first argue that the commission acted arbitrarily, illegally, and in abuse of its discretion by failing to approve the application because it "met the criteria established by [Woodbridge zoning regulation] Section 3.43." (Wiznias' Brief, p. 11.) The Wiznias contend that their special permit application required automatic approval as it was directly related to their subdivision application, and met the requirements of the applicable regulations because the use of lot 20 as a rear lot was necessary due to its unusual features. (Wiznias' Brief, pp. 6-8.) In their reply brief, the Wiznias additionally argue that the phrase "the land in question" contained in § 3.43(b) refers to the unusual features of the proposed rear lot that render its creation necessary, not the unusual features of the entire subdivision. (Wiznias' Reply Brief, p. 3.) CT Page 3922
In opposition, the commission argues that its decision to deny the special permit application was within its discretion (Commission's Brief, p. 14); and is reasonably supported by the record. (Commission's Brief, p. 12.) It further argues that Woodbridge zoning regulations § 3.43(b) refers to "a parcel to be subdivided and not a rear lot that has arbitrarily been mapped by an engineer as part of a subdivision plan." (Emphasis in original.) (Commission's Brief, p. 16). The commission contends, therefore, that "[t]he `use' of a rear lot here was obviously not necessary to subdivide the parcels at issue and to approve [rear lot 20] by special permit would have violated Section 3.43." Id. The commission additionally contends that pursuant to General Statutes §8-3c (b), it gave due consideration to the inland wetlands agency's denial of the Wiznias' subdivision application in reaching its decision.[2] (Commission's Brief, p. 17.)
Our Supreme Court has "recognized that the special permit process is, in fact, discretionary." Irwin v. Planning Zoning Commission,244 Conn. 619, 626, 711 A.2d 675 (1998). "Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process . . . If the special permit process were purely ministerial there would be no need to mandate a public hearing." (Emphasis in original; internal quotation marks omitted.) Id., 627.
"The basic rationale for the special permit [is] . . . that while certain [specially permitted] land uses may be generally compatible with the uses permitted as of right in particular zoning districts, their nature is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site." (Internal quotation marks omitted.) Barberino Realty Development v. Planning Zoning Commission, 222 Conn. 607,612, 610 A.2d 1205 (1992). "A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values." (Internal quotation marks omitted.) Heithaus v. Planning Zoning Commission, supra, 258 Conn. 215-16. "[B]efore the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns . . . would adversely impact the surrounding neighborhood." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, supra, 244 Conn. 627.
"When ruling upon an application for a special permit, a planning and CT Page 3923 zoning board acts in an administrative capacity . . . [I]t is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Citations omitted; internal quotation marks omitted.) Irwin v. Planning ZoningCommission, supra, 244 Conn. 627.
"A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. (Internal quotation marks omitted.) Doyen v. Zoning Board ofAppeals, 67 Conn. App. 597, 603, 789 A.2d 478; cert. denied, 260 Conn. 901,793 A.2d 1088 (2002). On appeal, the court must "decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts . . ." Irwin v. Planning Zoning Commission, supra, 244 Conn. 627-28. "If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application." Id., 628.
"Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court." (Internal quotation marks omitted.) Doyen v. Zoning Board of Appeals, supra, 67 Conn. App. 603. "When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." Planning ZoningCommission v. Gilbert, 208 Conn. 696, 706, 546 A.2d 823 (1988). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, supra, 244 Conn. 628.
Woodbridge zoning regulations § 3.43 governs the creation of rear lots and provides: "The Commission may authorize the issuance of a special permit, with or without conditions, to allow on a rear lot any use otherwise permitted in the Zone if it finds that such lot provides for the best development of the land and that the public health and welfare are not adversely affected. The approval of a rear lot shall be considered only in the following instances: (a) In the case of an existing rear lot: if the Commission determines that the lot has been unintentionally landlocked or unintentionally deprived of minimum lot frontage on an accepted street; (b) In the case of a parcel to be divided into two or more lots: if the Commission determines that the use of a CT Page 3924 rear lot is made necessary by unusual features peculiar to the land in question, such as difficult drainage, difficult configuration, temporary flooding, steep topography, public utility lines or easements." (ROR, Item GG, p. 29.) Section 3.43(b) further provides that "[i]t is not the intent of these Regulations to increase the density of land development by further division of existing house lots nor, in the case of a new subdivision, to encourage the creation of rear lots." Id.
In the present appeal, the Wiznias submitted an application for a special permit to create a rear lot, not to seek approval for a use on an existing rear lot. Thus, only subsection (b) of § 3.43 is applicable.
The minutes of the commission's working session, dated December 17, 2001, indicate that the commission considered a number of factors in reaching its conclusion, including the intent of the regulations disfavoring rear lots and the inland wetlands agency denial of the Wiznias' subdivision application, which the commission considered with regard to the application's effects on health and safety. (ROR, Item AA, p. 2.)
The minutes of the meeting during which the commission deliberated on the special permit application reveal that commissioner King referred to paragraph A of Chapter 1 of the Woodbridge subdivision regulations[3]
and noted the second page of the inland wetlands denial letter, "which indicates that the agency feels there would be an effect on health and safety. Mr. Fineberg [agreed] to taking that into consideration when making a decision . . ." (ROR, Item AA, p. 2.)
The record also reveals the following. Alan Shepard, an engineer hired by the Wiznias for the subdivision project, appeared at the public hearing in support of the special permit application to create rear lot 20, and testified that there exists a drop of approximately thirty feet from the existing road to lot 20, which would result in an increased disturbance to the land if a road was placed in that area. (ROR, Item V, p. 4.) Shepard further testified that lot 20 is surrounded on the north, east and south by wetlands or waterways; id.; but admitted that feasible alternatives to creating rear lots exist. (ROR, Item V, p. 8.) Shepard observed: "[W]e do [have] some feasibilities as far as layouts with no rear lots . . ." (ROR, Item V, p. 10.) Additionally, counsel for the Wiznias contended that all the requirements of § 3.43 were met. (ROR, Item V. p. 7.) Shepard, however, acknowledged that the commission is the party that interprets [the] regulations"; id.; "[a]nd the rear lot regulations [allow] the Board in [its] discretion to allow the developer to use . . . the rear lots so we don't have to force the road down to CT Page 3925 areas, steep grades, wetlands, watercourses, natural features to get to those lots." (ROR, Item V, p. 8.)
As stated earlier, it is within the commission's discretion to determine whether and in what manner a particular zoning regulation section applies to a particular situation. Irwin v. Planning ZoningCommission, supra, 244 Conn. 627. This was acknowledged by the Wiznias' own expert. (ROR, Item V, p. 7.) The commission determined that the Wiznias' application did not meet the requirements of § 3.43 because the rear lot was not shown to be "necessary by any unusual features peculiar to the land in question." (ROR, Item FF.) The Wiznias urge the court to adopt their view that a special permit application for the creation of a rear lot pursuant to § 3.43 should be approved if the proposed rear lot itself has unusual features.
Thus, an issue central to the determination of this appeal is whether the phrase "unusual features peculiar to the land in question" in § 3.43 of the Woodbridge zoning regulations contemplates that the unusual features are peculiar to the proposed rear lot or to the undivided parcel as a whole. In a case factually similar to the present appeal, the court, Downey, J., determined that the term "necessary" as used in Woodbridge zoning regulations § 3.43 means "necessary to allow the plaintiff to divide his property into two building lots, conforming in size and all bulk requirements." Sirowich v. Town Planning ZoningCommission, Superior Court, judicial district of New Haven, Docket No. CV 99 0423591 (August 1, 2000, Downey, J.). In Sirowich, a landowner sought to divide his lot into two lots, keeping his existing house on the proposed rear lot. The parcel contained wetlands on the front of the parcel, and the plaintiff asserted that without the presence of those wetlands he would not need a special permit to subdivide. In Sirowich the Woodbridge planning and zoning commission denied the plaintiff's application on the grounds that "the application did not meet the requirements of Section 3.43 . . ." (Internal quotation marks omitted.)Id. The court sustained the plaintiff's appeal, determining, in part, that the "existence and location of the wetlands" on the front of the parcel were unusual features peculiar to that parcel and a creation of a rear lot in these circumstances was necessary for the plaintiff to subdivide, thereby meeting the criteria of Woodbridge zoning regulations § 3.43(b). See id.
In Sirowich, the court found that substantial record evidence demonstrated that a rear lot was necessary to subdivide the plaintiff's property. In the present case, record evidence demonstrates that feasible alternatives exist to subdivide without the creation of a rear lot. In the present appeal, the commission, like the court in Sirowich, CT Page 3926 determined that the term "unusual features peculiar to the land in question" pertained to the whole undivided parcel. Unlike the plaintiff in Sirowich however, the Wiznias admitted that the parcel did not need to create a rear lot for the parcel to be subdivided.
Although the Wiznias produced evidence that the proposed rear lot would comply with the technical requirements of § 3.43 relating to size and access, the record reveals no evidence demonstrating that the rear lot complies with the general requirement of § 3.43(b) that the creation of the lot is necessary to the subdivision of the parcel due to the parcel's unusual features. To the contrary, the Wiznias themselves, through their engineering expert, admit that the parcel could be subdivided without the use of a rear lot. (ROR, Item V, p. 10.) Accordingly, the commission was acting within its discretion when it interpreted its zoning regulations and determined that in the Wiznias' situation the rear lot was not necessary due to unusual features as mandated by § 3.43.
The Court finds the interpretation espoused by the Wiznias, that a special permit application for the creation of a rear lot pursuant to § 3.43 should be approved if the proposed rear lot itself has unusual features, would lead to "unreasonable or bizarre results" that would effectively abrogate § 3.43 by requiring rear lot approval whenever a lot with wetlands, steep topography, or some other unusual feature can be carved out of the whole parcel. Planning Zoning Commission v.Gilbert, supra, 208 Conn. 706. Section 3.43(b) permits approval of rear lots only in specific circumstances, one of which is the necessity of a rear lot in order to subdivide a parcel. See Sirowich v. Town Planning Zoning Commission, supra, Superior Court, Docket No. CV 99 0423591.
The Court finds the record contains substantial evidence to support the commission's denial of the Wiznias' special permit application on the ground that the "proposed use of rear Lot #20 was not made necessary by any unusual features peculiar to the land in question as set forth in Section 3.43(b)." (ROR, Item FF.) Accordingly, the commission's decision was not unreasonable, arbitrary or illegal.
 II
The Wiznias next argue that the commission violated their constitutional equal protection rights by engaging in selective treatment when it denied their application for a special permit to create rear lot 20. The Wiznias contend that "the Commission required [them] to submit a separate application for their special permit to create a rear lot, CT Page 3927 instead of considering that request as part of the subdivision application" (Wiznias' Brief, pp. 12-13); and to attend separate hearings for the special permit and subdivision applications when the commission had not required other applicants to do the same. (Wiznias' Brief, p. 13.) The Wiznias argue further that the commission acted in bad faith by denying their special permit application with "no reasonable basis for doing so." Id.
The commission responds that the Wiznias were applicants seeking a permit to conduct a regulated activity. (Commission's Brief. p. 19.) The commission argues that the Wiznias have not provided any evidence to support their argument of selective treatment except for a self-serving letter from their attorney to the commission. (Commission's Brief, p. 20.) Additionally, the commission contends that the process of the Wiznias' application was not hindered in any way as a result of the requirement that they submit a special permit application as the commission held a public hearing and deliberated on the special permit application on the same day as, and prior to, its deliberations on the subdivision application pursuant to the Wiznias' specific request. (Commission's Brief, pp. 20-21.)
"The Equal Protection Clause of theFourteenth Amendment to the United States Constitution is essentially a direction that all persons similarly situated should be treated alike . . . A violation of equal protection by selective [treatment] arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2). . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person . . ." (Citations omitted; internal quotation marks omitted.) CadlerockProperties Joint Venture, L.P. v. Commissioner, 253 Conn. 661, 670-71,757 A.2d 1, cert. denied 531 U.S. 1148, 121 S.Ct. 1089, 143 L.Ed.2d 963
(2000). "[T]he requirement imposed upon [p]laintiffs claiming an equal protection violation [is that they] identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently." (Emphasis in original; internal quotation marks omitted.)Id., 672. Moreover, if a plaintiff "does not allege selective treatment based upon his race, religion, or any intentional effort by [the] defendants to punish him for exercising his constitutional right, [the plaintiff] must demonstrate that [the] defendants maliciously singled [him] out . . . with the intent to injure him." (Internal quotation marks omitted.) Thomas v. West Haven, 249 Conn. 385, 393, 734 A.2d 535, cert. denied, 528 U.S. 1187, 120 S.Ct. 1239, 146 L.Ed.2d 99 (1999) (violation of the plaintiff's equal protection rights found where evidence revealed commissioners' intentional treatment of plaintiff was selective and CT Page 3928 malicious compared to similarly situated applicants for zone changes). "Mere laxity in the administration of the law, no matter how long continued is not and cannot be held to be a denial of the equal protection of the law. To establish arbitrary discrimination inimical to constitutional equality there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity." Bianco v. Darien, 157 Conn. 548, 559-60, 254 A.2d 898
(1969); Kroll v. Steere, 60 Conn. App. 376, 385, 759 A.2d 541, cert. denied, 255 Conn. 909, 763 A.2d 1036 (2000).
Our Supreme Court has determined that in a situation that involved alleged selective treatment by public officials having broad discretion to make decisions that relate to zone change applications, "the factors that render applicants similarly situated for comparison purposes necessarily are based upon the procedural requirements imposed on those seeking to obtain zone changes." Thomas v. West Haven, supra, 249 Conn. 403. The court further determined that "[t]he appropriate group for comparison to the plaintiffs . . . [included] all applicants who were before the commission requesting a zone change during the same general time period as the plaintiffs, and who thus, theoretically, were subject to the same rules and requirements." Id. The appropriate group for comparison to the Wiznias includes all applicants who appeared before the commission requesting a special permit to create rear lots in subdivisions during the same general time period that the Wiznias' application was submitted and determined. See id.
A review of the record reveals the following. At an October 1, 2001 meeting, the commission held a public hearing on the proposed subdivision, in which lot 20 was sought to be created. (ROR, Item K.) The commission received additional exhibits, and no member of the public spoke in support of the application. Attorney Dufour, representing adjacent property owners, opposed the Wiznias' application, stating that Woodbridge zoning regulations § 3.43 was not followed because the Wiznias did not submit an application for a special permit, notice that the application was submitted was not given and a public hearing on the application was not held. (ROR, Item K pp. 75-76.) After asking whether any other member of the public was present to speak in support or opposition of the application, and receiving no response, the commission continued the hearing to the next meeting. (ROR, Item K, p. 78.)
On October 9, 2001, counsel for the Wiznias sent a letter to the commission to apply for a special permit to create rear lot 20. In this letter, counsel stated that "[a]t the public hearing on the . . . subdivision application on October 1, a comment was presented to theCommission that the applicant had not submitted an application for a CT Page 3929 special permit for rear lots pursuant to Section 3.43 of the zoning regulations." (Emphasis added.) (ROR, Item O, p. 1.) Counsel further stated: "As I understand the situation, historically the Commission has not required a separate application for . . . a special permit [for rear lots pursuant to § 3.43], and has taken the position that where rear lots are part of a proposed subdivision that approval for rear lots will be considered as part of the subdivision application. This has been the case in at least two recent subdivision applications, namely Racebrook Estates and Woodbridge Estates." Id.
The minutes of the commission's December 17, 2001 work session meeting, during which the commission deliberated on the special permit application for rear lot 20, reveal that the commission considered several issues regarding rear lots. Specifically, commissioners Fineberg and Smith stated that "the regulations do not favor rear lots." (ROR, Item, AA, p. 2.) The commission also took "into account the consideration afforded to other applicants when decisions were made." Id. "Discussion involved other subdivisions . . . [and commission chairman] Celotto stated that he was not sure that previous approval of rear lots might have had the same impact on neighbors." Id. Commissioner Luciani referred to "the precedent set by former rear lot approval [while commissioner] Palmeri . . . [stated] that due to changes in the town conditions, the precedent does not have to stand." Id.
A review of the record thus indicates that at the time the special permit application was submitted the Wiznias did not claim that the commission required the submission of a special permit application to create a rear lot. Rather, the Wiznias voluntarily submitted their special permit application for the creation of the rear lot in response to the neighbors' comments presented in opposition at the public hearing. In response to the submission of the application, the commission held a public hearing. (ROR, Item V.) During its deliberation on the special permit application, the commission considered other subdivisions with rear lots and prior rear lot approvals and indicated that conditions particular to the Wiznias' application may not have been present in the prior approvals. Neither the minutes, nor the transcript of the October 1, 2001 meeting demonstrate that the commission requested or required the Wiznias to apply for a special permit. (ROR, Item K; Item L.) Moreover, while the Wiznias' letter to the commission requesting a special permit for the creation of rear lot 20 mentioned two recent subdivision applications, Racebrook Estates and Woodbridge Estates, there is no evidence showing when those applications were submitted, if they were similar in all relevant aspects, when they were determined, or in what manner they were determined. Nor is there record evidence of any other applications before the commission that were subject to the rules and CT Page 3930 regulations governing rear lots and subdivisions during the same time period as the Wiznias' application. In addition, there is no evidence showing malicious or bad faith intent by the commission in determining the Wiznias' application. Moreover, as discussed in part I, there is substantial record evidence to support the commission's basis for denying the Wiznias' application.
Accordingly, the Court finds the Wiznias have not met their burden of showing that they were treated differently from similarly situated applicants or that the commission determined their application with malicious or bad faith intent.
For the foregoing reasons, the Wiznias' appeal is dismissed.
Brunetti, J.